GRAND LODGE OF THE INDEPENDENT ORDER OF ODD FELLOWS OF THE STATE OF NEW JERSEY

*v.*

WIELAND LODGE, No. 113, INDEPENDENT ORDER OF ODD FELLOWS, et al.

[Decided July 23d, 1921.]

1. The Grand Lodge of Independent Order of Odd Fellows which permitted certain lodges to conduct their work in other than the English language, under their constitution and regulations have the power to require such subordinate lodges to conduct their work in the English language when in its judgment it was deemed advisable for the good of the order so to do.

2. Members of a subordinate lodge are not entitled to divide the funds of such subordinate lodge by reason of a breach of contract by the Grand Lodge; such funds being held in trust for charitable purposes.

3. Where the Grand Lodge brought action against a subordinate lodge, and the members thereof, to recover trust funds which had been diverted by members of the subordinate lodge, at a time when the acts and proceedings of the members of the subordinate lodge were not known to the complainant, and were not disclosed until final hearing, when it appeared that the subordinate lodge had gone out of existence, the complainant was entitled to strike out the name of such subordinate lodge as a defendant to the suit.

4. Where members of a subordinate lodge intended to abandon and destroy it as an organization by withdrawing from it, dissipating its funds, and attempting to form a new organization, and did all in their power to dissolve it, the individual members are estopped from setting up that the lodge has not, to all intents and purposes, ceased to exist in an action against them to recover trust funds diverted from their proper purpose.

9

5. Moneys of a subordinate lodge of Odd Fellows in New Jersey do not belong to the members of such lodge, and where such members dissolved the lodge, a court of equity will not decree that such moneys be distributed among the members, but will be guided by the code and laws of the order in determining to whom the fund belongs, and when such laws require it, the funds will be paid to the Grand Lodge, impressed with a trust to be administered by the Grand Lodge.

On bill, &c.

*Mr. Robert H. McCarter, Mr. Walter F. Hayhurst* and *Mr. Charles A. Woodruff,* for the complainant.

*Mr. William B. Gourley* and *Mr. Addison Ely,* for the defendants Matthew Elsasser and others.

FIELDER, V. C.

Complainant is a fraternal beneficial order incorporated under the laws of this state. It alleges that Wieland Lodge, No. 113, an unincorporated subordinate lodge of the order, while existing and acting under a charter issued by complainant, accumulated certain property and funds amounting to upward of $2,200, impressed with a trust for the purpose of benevolence and charity toward the members of the order, such as visiting the sick, relieving the distressed, burying the dead and educating orphans, under the constitution, laws and rules of the order; that upon accepting its charter, Wieland Lodge agreed that in default of its operating in conformity with said constitution, laws and rules, its property and funds should become the property of complainant for the purpose of benevolence and charity under the rules of the order; that on or about November 12th, 1919, the members of Wieland Lodge determined that the property and funds of the lodge should be divided *pro rata* among themselves, and that pursuant to such determination a division was made among the members, who thereupon delivered the same to one or more of the individual defendants to this suit, who still have possession of the same. The defendants named are Wieland Lodge and certain members of the lodge who acted as a committee for the distribution and subsequent holding of the funds and other property of the lodge; also a bank and a building and loan asso-

ciation, which last two defendants do not appear, from the proofs, to have had any connection with the matter in controversy. Complainant prays an injunction restraining the defendants from disposing of the funds and property of Wieland Lodge and an order that the same be turned over to complainant.

The Independent Order of Odd Fellows is composed of three series of lodges—first, the Sovereign Grand Lodge, the highest and supreme lodge of the world, with headquarters in the United States; second, the grand lodges (of which complainant is one) instituted under charters granted by the Sovereign Grand Lodge, and third, subordinate lodges (of which Wieland Lodge was one) chartered by a Grand Lodge.

The Grand Lodge of New Jersey was instituted by charter dated August 3d, 1833, and was authorized by the Sovereign Grand Lodge to grant charters to open lodges according to the laws and usages of the order of Odd Fellowship. Wieland Lodge was chartered by the Grand Lodge of New Jersey November 18th, 1880. Its charter provided that it should act according to the laws of the order and in conjunction with and obedience to the Grand Lodge, adhering to and supporting the constitution and laws of the Grand Lodge, and in default thereof its charter might be suspended or taken away, or it should be dissolved or forfeit its charter and its property, money, books and papers should become the property of the Grand Lodge.

When the charter to Wieland Lodge was issued there was in effect a constitution of the Grand Lodge of New Jersey adopted in 1873. This remained in force until a revision was adopted in 1918. The essential features of both constitutions applicable to this case are as follows:

"The Grand Lodge of New Jersey is the supreme tribunal of the order in this state. It possesses, by virtue of its charter from the Sovereign Grand Lodge, full power to grant charters to subordinate lodges or to suspend or take away the same for proper cause; to pass laws for the regulation and work of such subordinate lodges. Subordinate lodges possess such powers only as are conferred by their charters and the usages and laws of the order. In all cases where a lodge shall have been suspended or expelled, or its charter shall have been vacated or forfeited, the charter, funds, books, papers and effects of all kinds shall revert to the Grand Lodge. All effects or funds received by the Grand Lodge from any suspended or expelled subordinate lodge shall be held in trust, to be

restored to such lodge upon expiration of suspension, reinstatement after expulsion or resuscitation at any time within three years after suspension or expulsion, after which time such effects or funds shall become the property of the Grand Lodge and shall be placed in the general fund. Such funds and property are held only in trust for the charitable purposes of the order and must be applied solely to these purposes. The donation or division of such funds or other property among the members in any manner not especially provided for by the laws of the order, is a violation of the trust and of the purposes of the order, the penalty for which will be expulsion."

Wieland Lodge was located in Carlstadt, a town which, in 1880, was inhabited almost exclusively by Germans and the German language was in general use by the people of that locality. One of the inducements held out by the officials of the Grand Lodge who organized Wieland Lodge, was that those who joined the lodge might use the German language in the work of the order, and that they might have a ritual printed in German for the conduct of their proceedings. Copies of a German ritual were supplied by the Grand Lodge to Wieland Lodge and the constitution of the latter was printed in German, and the proceedings and lodge work of Wieland Lodge were conducted in the German language from the time of its organization, to the knowledge of the officials of the Grand Lodge and without objection by them. Wieland Lodge worked in harmony and sympathy with the Grand Lodge to, on or about November 20th, 1918, when, at a duly-constituted session of the Grand Lodge, at which Wieland Lodge was represented by its delegate, the Grand Lodge, by a vote of one hundred and sixty-five ayes to thirty-two nays, adopted an amendment to its code of laws, providing that on or before June 30th, 1919, all subordinate lodges working in any other than the English language should surrender their rituals in exchange for rituals printed in English, and that after December 31st, 1919, all work and business of such subordinate lodges should be conducted in the English language. A copy of the minutes of the Grand Lodge containing this amendment was sent to Wieland Lodge, and at a meeting of the lodge its delegate to the Grand Lodge reported the action taken by the Grand Lodge. This amendment to the code of laws was displeasing to the members of Wieland Lodge, and at its meeting held October

15th, 1919, it was resolved not to surrender their German rituals and to withdraw the lodge funds from the place where they were kept on deposit and to turn the same over to a committee which was formed to organize a new benevolent association. At a subsequent meeting held November 12th, 1919, it was again decided, by a vote of forty-three in favor to three against, to retain the German language and rituals and to make a *pro rata* distribution of the funds of the lodge among the members thereof. Checks for the *pro rata* distribution had already been drawn, or were drawn that night, each payable to a member and were delivered to the members. Three of the members cashed their checks for a total of about fifty-one dollars, and the other members endorsed theirs, delivered them to the chairman of their committee who cashed them and thereafter placed the total amount so received by him (some $2,250) in a private safe, where it is held under a restraining order of this court. The intention of the seceding members of Wieland Lodge was to form or join a new German benevolent association known as the United Brothers Lodge, to which new lodge the committee of Wieland Lodge members holding the funds formerly of Wieland Lodge was to pay such funds. A meeting of the United Brothers Lodge was held December 23d, 1919, and officers were elected, but no constitution was adopted. The United Brothers Lodge had no charter or certificate of incorporation and it never received any of the Wieland Lodge money.

The individual defendants to this suit contend that the organization of Wieland Lodge as a German-speaking lodge, with the consent of the Grand Lodge and the continued use of rituals printed in German, supplied by the Grand Lodge, and the uniform conduct of its proceedings and work in German for nearly forty years, with the knowledge and permission of the Grand Lodge, constituted a contract between the members of Wieland Lodge and the Grand Lodge, which the Grand Lodge could not rescind or repudiate by its action of November 20th, 1918, legislating against the future use of the German language, and that because of such action by the Grand Lodge the members of Wieland Lodge had the right to treat the contract as terminated.

When Wieland Lodge was organized one of the by-laws adopted by it (printed in German and translated on the hearing) reads as follows:

"All business and procedure of this lodge shall be made in the German language, and no proposition for the change of the business language shall be adopted as long as there are still five members of this lodge who know the German language and who wish to retain it."

This by-law amounted to an agreement among themselves that they proposed to adhere to the use of the German language, but it was subject to the right of the Grand Lodge to enact general legislation governing all subordinate lodges and to regulate the written work of the order. The Grand Lodge might permit lodges to conduct their work in other than the English language, but when in the judgment of the Grand Lodge it was deemed advisable for the good of the order that the form of the ritual or of the workings of the order should change, or that the English language should be used by all subordinate lodges, it had the reserved power under the constitution and under the charter granted to Wieland Lodge to so determine at a duly-constituted session of the Grand Lodge. When its action was taken November 20th, 1918, it had nineteen German, six Italian and one Swedish subordinate lodges. The charters of these subordinate lodges defined the extent of the powers and rights of each lodge and expressly provided that such lodges would act according to the laws of the order and in conjunction with, and obedient to, the Grand Lodge, adhering to and supporting the constitution and laws of the Grand Lodge. Inducing men to join a lodge, in 1880, in which German might be the language used, and permitting the conduct of the work in that language over a period of years, no more constitutes a contract that the use of such language would forever be permitted, than the printing of a ritual, delivering it to a lodge and permitting its use for many years, would constitute a contract that no other form of ritual would ever be used. The Grand Lodge had the right to legislate that. English should be the only language used in its subordinate lodges in this state.

But assuming that such contract did exist, its breach did not justify the action taken by the members of Wieland Lodge. The theory of the members was that they had the right to continue the use of the German language in the work of their lodge and to continue to exist as a subordinate lodge of the order, notwithstanding the adoption of the law which forbade the use of the German language. Their contention was that the action of the Grand Lodge in passing such a law was void as to them and they need not observe it. Therefore, the alleged breach of contract on the part of the Grand Lodge did not justify their action in distributing the trust funds held by their lodge contrary to the rules of the order. *Schubert Lodge* v. *Schubert Kranken Verein*, 56 *N. J. Eq. 78, 82.*

The claim of the individual defendants that the Wieland Lodge charter was taken away because its members refused to obey the language law of the Grand Lodge is not founded on fact. When the grand master of the Grand Lodge learned of the action of the members of Wieland Lodge at their meetings of October 15th, 1919, and November 12th, 1919, he appeared at a meeting of the lodge held on or about November 26th, 1919, and demanded that their action in distributing the funds of the lodge be rescinded, and upon the refusal of the members to accede to his demand, the grand master, by virtue of his authority under the constitution and laws of the Grand Lodge, announced the suspension of the lodge and informed the members that they could be heard on his action before the grand committee, and it was then and there agreed that the grand committee would meet December 12th, 1919, at the Wieland Lodge room. Formal notice, pursuant to the laws of the order, was subsequently given the officers of Wieland Lodge that on the date fixed the lodge might appear before the grand committee and be heard on the action of the grand master. It appeared by its presiding officer and a committee of members who admitted the distribution of funds and stated that the members of the lodge refused to reverse their action, and the committee filed with the grand committee on behalf of the lodge, a written protest against the suspension. The grand committee thereupon sustained the action of the grand master and demanded the funds and property of Wieland Lodge,

which demand was refused. The suspension of Wieland Lodge, and the demand for its funds and property, were not made because it refused to adopt the English language in its work, but because it had paid out its funds contrary to the law of the order and had distributed such funds among its members. The date for the language law to take effect was January 1st, 1920, and that time had not yet arrived.

The individual defendants next contend that Wieland Lodge was not lawfully suspended because no notice was given to its members (who claimed property rights in its funds) of the intention of the grand master to appear at its meeting of November 26th, 1919, and that no notice was given the members of the meeting of the grand committee, and their argument seems to be that Wieland Lodge is still in existence and that, if its funds were unlawfully paid out, they should be returned to the lodge and not paid to complainant, and in support of this argument it is pointed out that complainant has made Wieland Lodge a defendant to this suit. When the bill was filed all the acts and proceedings of the members of the lodge were not known to the complainant and were not disclosed until final hearing. Under the circumstances, complainant may, if it desires, strike out Wieland Lodge as a defendant to this suit. I have stated the proceedings of the grand master and the grand committee and I do not think it necessary to examine the laws of the order to ascertain whether their proceedings conformed to such laws. Wieland Lodge has not answered in this suit, but the answer of the individual defendants admits that Wieland Lodge no longer exists and asserts that the lodge could, by its voluntary act, at any time relinquish its association and affiliation with the Grand Lodge, and that it had decided so to do. It seems quite clear from the evidence that the members of Wieland Lodge intended to abandon and destroy it as an organization by withdrawing from it, dissipating its funds and attempting to form a new organization. They did all in their power to dissolve it, and the individual members are now estopped from setting up that the lodge has not to all intents and purposes ceased to exist. *Knights of Pythias* v. *Germania Lodge, 56 N. J. Eq. 63.*

The final defence urged by said defendants is that the funds in question were moneys of the members of Wieland Lodge, accumulated by them for the benefit of themselves under the rules of the order, and that a court of equity will not divert such funds to a purpose foreign to its accumulation. The answer of said defendants admits that the funds were held by Wieland Lodge in trust for the purposes of benevolence and charity. These purposes are shown to be sick and funeral benefits, relieving the distressed, educating orphans and the maintenance by the Grand Lodge of a home for aged and indigent members, in which home fifty-two aged members of the order are now cared for, one of them being a member of Wieland Lodge, and funds of defunct lodges revert to an Aged Odd Fellows Fund, administered by the Grand Lodge. If the funds in question are ordered paid to the Grand Lodge, they must be held subject to being restored to the members of Wieland Lodge, if during a period of three years the lodge is reinstated, after which period they are held in trust by the Grand Lodge for the benevolent and charitable purposes of the order. The attempt of the members of Wieland Lodge was to divert this trust fund from benevolent and charitable purposes and pay it to themselves. Most of them intended, subsequently, to pay the money they received over to another organization, the objects of which are not disclosed, while some of them had no such intention and kept their *pro rata* share of the fund. The fund was, undoubtedly, accumulated over a period of years. Some of it was probably paid in by men who through death, resignation or explusion had ceased to be members of the lodge. If, on abandonment of the lodge charter, the trust fund should be paid in any other way than to the Grand Lodge, to whom does it belong? To the present members of the lodge, some of whom are perhaps new members and have contributed but a small portion of the fund, or to all persons (or their representatives) who at any time paid into it? It would be difficult to say in whom, if not in the Grand Lodge, the trust fund vested on the dissolution of the lodge. I think we can look only to the constitution, code and laws of the order for our guide in determining to whom the fund belongs, and I find that by the laws of the Grand Lodge in force when the money in question was paid into the treasury of

Wieland Lodge, the fund under the circumstances of this case was impressed with a trust to be administered by complainant and should be paid to it.

I think my view of this case is supported by *State Council* v. *Sharp, 38 N. J. Eq. 24; Knights of Pythias* v. *Germania Lodge, supra; Schubert Lodge* v. *Schubert Kranken Verein, supra,* and *State Grand Lodge* v. *Morrison, 112 Atl. Rep. 862.*

The charter, rituals and paraphernalia used by Wieland Lodge in connection with the work of the order should also be turned over to complainant.