# Grand Castle, Knights of Golden Eagle, Appellant, *v.* Taylor et al.

*Beneficial associations — Unincorporated associations — Dissolution—Ownership of funds—Parent and subordinate bodies—Trust funds—Equity—Confiscation—Act of June 20, 1883, P. L. 132.*

1. Where the parent body of a beneficial association has adopted in its general laws the provisions of the Act of June 20, 1883, P. L.

132, all subordinate bodies and their members become subject to such act.

2. Where the constitution of the parent body provides that where a subordinate body is dissolved it shall deliver its funds to the parent body "in compliance with the Act of Assembly of June 20, 1883," the subordinate body, on its voluntary dissolution, must deliver its funds to the parent body.

3. The statute is not confined to cases where there is a compulsory dissolution by the action of the parent body.

4. Where the constitution of the parent body provides that the funds so surrendered shall be used for the benefit of such of the members of the dissolved subordinate body as shall become members of a body called the "Castle of Protection," and, if no such members join the "Castle of Protection" within six years, the funds shall become the absolute property of the parent body, the members of a subordinate body cannot claim, on voluntary dissolution, that such provision is confiscatory.

5. In such case the parent body is a trustee of the fund to be administered by it for the benefit of the members of dissolved subordinate bodies, and it can be compelled in equity to so administer the fund.

6. The parent body cannot compel members of subordinate lodges to accept the "Castle of Protection" membership, but it extends to them the opportunity, and this is all that is required.

7. Where on a bill in equity by a parent body to compel the members of a voluntarily dissolved subordinate body to pay over funds distributed to them, where the plaintiff, construing its own laws, states in the proceedings that it will approve the dissolution and the members will be admitted within six months thereafter to the "Castle of Protection" if they so desire, the court will enter a decree in plaintiff's favor.

Argued April 16, 1923. Appeal, No. 271, Jan. T., 1923, by plaintiff, from decree of C. P. Blair Co., in equity, No. 988, dismissing bill in equity, in case of Grand Castle, Knights of the Golden Eagle of Penna. v. C. S. Taylor et al., members of Altoona Castle, and Altoona Castle, No. 145, Knights, etc. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Bill in equity for an account and to compel payment of money. Before BALDRIGE, P. J.

The opinion of the Supreme Court states the facts.

Bill dismissed.   Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Webster Grim,* with him *R. A. Henderson* and *Harry E. Grim,* for appellant—The Act of 1883 is in harmony with the laws of Altoona Castle and the Grand Castle in that the trust is for the same benefit on dissolution, and shall be continued through the agency of the Castle of Protection.

A corporation organized for benevolent and charitable purposes could not, under the act incorporating it, use its funds in any other manner except as provided in the act: Carlin v. A. O. H., 54 Pa. Superior Ct. 512; Summer Lodge I. O. O. F. v. Odd Fellows Home, 77 Atl. R. 36.

When members withdraw from an organization, they thereby abandon their rights to those who retain their membership in the organization: Kayley v. McCourt, 235 Pa. 304.

*Thos. H. Greevy,* with him *J. D. Hicks,* for appellees.— In the case at bar, the parent body has nothing whatever to do with the dissolution of the subordinate body. Indeed, it objects to the dissolution and surrender of the charter and this case is the evidence of it, hence the Act of 1883, under which this bill is based, has no application whatever, and even if the superior or parent body dissolved or expelled defendant subordinate body, as is contemplated by this act, it could not even then confiscate the property: State Council Junior Order of U. A. Mechanics v. Emery, 219 Pa. 461; Wolfe v. Limestone Council, 233 Pa. 357.

The relationship between the Grand Castle Knights of the Golden Eagle of Pennsylvania with the local castle and the local castle and its members are all purely voluntary: Nat. Council Junior Order U. A. Mechanics v. State Council, 53 Atl. R. 1082.

On dissolution of the castle, funds were subject to the disposition and control of its members: State Council Junior Order of U. A. Mechanics v. Emery, 219 Pa. 461; Wolfe v. Limestone Council No. 373, 233 Pa. 357.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, June 23, 1923:

We have before us an appeal from a decree dismissing a bill in equity.

Defendants comprise the full membership of Altoona Castle, a subordinate association in a fraternal beneficial organization, of which plaintiff, appellant, is the parent body.

In June, 1920, defendants, by unanimous action, distributed among themselves the sum of $5,900 of funds belonging to their castle. In April, 1921, defendants all signed a resolution formally dissolving the castle and retaining as their own property, for future division among them, the balance in the treasury. Upon the refusal of the Grand Castle's demand for these funds, plaintiff filed this bill in equity, praying for delivery to it of the cash and property on hand, and for the appointment of a receiver to recover the moneys already distributed.

The court below found the property in controversy constituted a trust fund for the payment of sick and death benefits to the members of Altoona Castle, but concluded that, on dissolution of the latter, its funds could be divided pro rata among its surviving members, and accordingly dismissed the bill. Appellant contends this was error because contrary to the laws of defendant castle, the Grand Castle, and the State of Pennsylvania.

As ordained in the general laws of the parent body, the constitution of Altoona Castle provides, "Any division of the funds among the members is illegal."

The constitution of the Grand Castle states, by paragraph 67, that "When a [subordinate] castle is ......dissolved it shall......deliver its......funds

and other property to the Grand Chief or his deputy, in compliance with the Act of Assembly of June 20, 1883"; and, by paragraph 69, that all property received from a dissolved castle shall be paid to the Grand Castle for the use of such members of the former as may join the Castle of Protection, which is a body (governed by general officers of the order) composed of "members of defunct castles," who, after becoming members of this Castle of Protection, if they keep themselves in good standing by continuing to pay dues (as they must have done in their own lodge), are entitled to sick and death benefits.

The Act of June 20, 1883, P. L. 132, is written into the fundamental laws of the order, and this fact, of itself, brings Altoona Castle and its members within the provisions of that statute. After a long preamble stating the purposes of the legislation, which statement is applicable to the condition of affairs here presented, the act provides: "That the funds and effects of unincorporated associations for benevolent, charitable, or beneficial purposes, constituted or organized under any warrant or charter granted by any association recognized or acknowledged as the parent or superior body, where the rules and regulations of such parent or superior body require that, upon the dissolution, expulsion, surrender of warrant or charter, or vacation of the same by such parent or superior body, the moneys, property and effects of such subordinate association shall be delivered and paid to the parent or superior body, are hereby declared to be trust property, and it shall be unlawful for any such subordinate association to divide or distribute the moneys, property or effects, or any part thereof to and among the members of such subordinate association or any member thereof, either directly or indirectly, or by way of donation, but all such moneys, property and other effects of such subordinate associations, upon the dissolution, expulsion, surrender of warrant or charter, or vacation of the same by the parent or superior body

for [from] which they have obtained the warrant or charter, under which they have been constituted or organized, shall be paid and delivered to the proper officers of such parent or superior body, and in case any such subordinate association shall or may have made any division or distribution of the moneys, property or effects held by such subordinate association, or any part thereof, to or among the members thereof, or any number of them, either directly or indirectly, the principal officers or trustees of the parent or superior body, to the use of the parent or superior body, may recover such moneys, property or other effects, so divided or distributed contrary to the provisions of this act, from the person or persons to whom the same or any part thereof shall or may have been paid or delivered, and the several courts of equity of this Commonwealth are hereby vested with full power and authority to enforce the provisions of this act as in other cases within their jurisdiction. And the said parent or superior body to whom any moneys, property or other effects of such subordinate association shall be paid and delivered shall take and hold the same for the purposes and intents for which they were received and held by such subordinate associations."

The statute in question is not only an act of our general assembly, but, as already said, it was expressly adopted in the general laws of the Knights of the Golden Eagle of Pennsylvania, and thus it was subscribed to by all members of the order, including defendants, who now contend, however, the Castle of Protection, whereby the trust obligations of the Act of 1883 are to be carried out by plaintiff, affords them no proper protection, because paragraph 69 of the constitution of the parent body provides: "All funds and other property received by the Grand Castle from a dissolved, suspended or defunct castle, or the amount received from sales of such property......, shall be held in trust by the Grand Castle for the use of such members of the defunct, dissolved or

suspended castle as may, under the provisions of articles 101 to 117, entitled 'The Castle of Protection,' become members of the Castle of Protection; provided, however, that if, for a period of six years, no members of the said defunct, dissolved or suspended castle shall become a member of the Castle of Protection, then the funds so received by the Grand Castle from such defunct, dissolved or suspended castle, shall become absolutely the property of the Grand Castle for the use of the Castle of Protection."

Article 101, above referred to, stipulates that, before a member of a defunct castle can join the Castle of Protection, the dissolution of his castle must have been approved by the executive board of the Grand Castle, and article 107 requires that application for such membership be made within six months after the date of dissolution. Defendants read these provisions as containing stipulations that, on the conditions existing in this case, would bar them from membership in the Castle of Protection; and, they claim, the proviso in paragraph 69, quoted above, as to funds of a dissolved castle becoming the property of the Grand Castle, should no members of the defunct subordinate join the Castle of Protection within six years, is confiscatory.

To the contentions just stated, plaintiff replies: "The fact that the appellees have not applied for membership in the Castle of Protection or that the dissolution [ of their subordinate castle] has not been approved by the executive board, is beside the issue. It could hardly be expected that a dissolution which was irregular in form or prohibited by the laws [of the order] would be approved, until the [required] conditions were complied with, and the limitation of six months as to membership only begins when the dissolution or surrender is approved. There is not the least doubt that after this issue is determined, and the fund paid to the Grand Castle for the use of the members of Altoona Castle in the Castle of Protection, that the dissolution will be approved by

the executive board, and, within six months thereafter, all the appellees admitted to membership if they so desire, and the *appellant is willing that such provision be incorporated into the final decree.*"

We are of opinion particularly, in view of the above italicized concession, or self imposed construction, that the Castle-of-Protection feature of plaintiff's organization sufficiently protects the membership of defendant body. This provides a trustee to take charge of the sick and death benefit fund and apply it to the purposes originally intended; but, if that security was not afforded members of a defunct subordinate association, as contemplated by the Act of 1883, plaintiff, having incorporated the statute into its laws, could be made to give such protection, and bring itself within the statute. The provision in the laws of the order, concerning the funds of a defunct subordinate becoming, under certain conditions, the property of the parent body, "for the use of the Castle of Protection," claimed by defendants as confiscatory, can in no proper sense be so classed; it is a reasonable provision: the Grand Castle is pledged by these laws to finance the Castle of Protection, and the Act of 1883 particularly provides that the "parent or superior body to whom any moneys, property or other effects of [a defunct] subordinate association shall be paid and delivered shall......hold the same for the purposes and intents for which they were......held by such subordinate associations."

Defendants contend, however, the Act of 1883 "has no application to the present case." They would have us rule that the statute applies only where the parent, or superior, body is the active force in bringing about the dissolution of the subordinate, that is to say, where it expels or causes the surrender or vacation of the latter's charter. With this view we cannot agree.

The statute in question is entitled, "An act to provide for the disposal of the property of unincorporated associations, organized for benevolent, charitable or bene-

ficial purposes, upon the dissolution, expulsion, surrender of warrant or charter or vacation of the same under which such associations have been constituted or organized." In explaining the purposes of the legislation, the third paragraph of the preamble to the act, after referring to parent and subordinate bodies, states, inter alia: "Whereas it has occurred that some of the subordinate associations have dissolved" (not "have been dissolved"); and this is followed with mention of subordinate associations having been expelled, their charters vacated by the parent organization, etc. The body of the act, in referring to the circumstances under which it shall apply, uses the same language as found in the preamble, but instead of saying "have dissolved," the expression, "upon the dissolution," is employed. It is perfectly plain that this is a mere variation in phraseology without any change of meaning, and that the statute covers a case like the present, where the subordinate association "has dissolved" of its own accord.

State Council, etc., v. Emery, 219 Pa. 461, differs in essential particulars from the case at bar, and does not control here. In the present instance, as before noted, the Act of 1883 is expressly made part of the contract between the parties, its terms being written into the law of the order; this was not so in the Emery Case. Here provision is made by the laws of the order for carrying out the trust features of the Act of 1883, which was not done in the other case. There are many other material differences, which will impress anyone reading the two cases, that need not now be discussed.

True, the writer of the opinion in State Council v. Emery expresses views (not essential to the decision) concerning the proper interpretation of the Act of 1883, and cites certain textbook writers, and cases from other jurisdictions, questioning the legal right of a supreme body to take over the funds of a subordinate association when it expels or cancels the charter of the latter, under authority of general laws of the order providing for

forfeiture of property. Here, however, there has been no cancellation of charter; on the contrary, the subordinate association voluntarily, through the unanimous action of its own members, has set about surrendering its charter. Moreover, there is no question of forfeiture of property; this is simply the case of delivering up "funds" in accordance with the terms of an agreement which stipulates that, in the event of dissolution of the subordinate association, its "funds and other property" shall be surrendered to the head of the order, to be held in trust primarily for the benefit of those who contributed to them, as hereinbefore particularized, "in compliance with the Act of Assembly of June 20, 1883."

In Schriner v. Sachs, 253 Pa: 611, 617, referring to State Council v. Emery, supra, and Wolfe v. Limestone Council, 233 Pa. 357, both of which are relied on by defendants, we said: "These cases merely decide that [on the facts there involved] a state council, after revoking the charter of a subordinate council, is not entitled to funds contributed by members of the subordinate council for sick and funeral benefits, or property belonging to it and contributed by its members previous to the revocation of its charter." We repeat, there has been no revocation of charter here; and the authorities in question do not control the present case, for this and many other reasons already indicated.

The compact to which defendants subscribed, upon becoming members of the Knights of the Golden Eagle, stipulates certain benefits to be enjoyed and obligations to be assumed, one of which is, upon a dissolution of their subordinate association, to pass over all funds to the Grand Castle, so that body may continue in its own proper way to carry out the general trust on which such funds had theretofore been held, and this obligation defendants must perform. Of course, no one can compel defendants, or any of them, to accept the Castle-of-Protection membership offered by the laws of the order and

expressly tendered by plaintiff; but they have the opportunity, which is all that is required.

The decree of the court below is reversed and the bill reinstated for the entry of a proper decree in accord with the views expressed in this opinion; the costs to be charged on the fund.