Nokomis Tribe No. 307, Improved Order of Red Men of Pennsylvania Dissolution Case.

Argued April 19, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

54

*Wm. M. Reese,* for appellant.

*Walter Lee Sheppard,* with him *Alexander M. De-Haven,* for appellee.

OPINION BY MR. JUSTICE STERN, June 17, 1938:

The controversy in this proceeding is over the distribution of the property of a fraternal organization which is undergoing voluntary dissolution, its assets consisting of cash in banks and some building and loan association stock.

In 1861 there was incorporated in Pennsylvania, by act of the legislature, the Great Council of the Improved Order of Red Men of the State of Pennsylvania, a secret, beneficial fraternity operating under the lodge system. The act of incorporation stated that the Order had been instituted for the purpose of affording relief to such of its members as might be suffering from sickness, distress or other causes, and for the furtherance of the general welfare of the membership.

Nokomis Tribe No. 307, Improved Order of Red Men of Pennsylvania, is a local branch or "tribe" which was constituted under a warrant or charter granted by the state council in 1895.

In 1906, by act of Congress, there was incorporated the Great Council of the United States of the Improved Order of Red Men. Among its stated purposes were the provision of benefits to its members and the care of their orphans and widows. To this paramount organization all state bodies were subordinate.

The learned chancellor in the court below found that, by the general laws of the Order promulgated by the national council in 1907, when a tribe dissolved all its funds and other property were to be turned over to the Great Council of the State, which, in turn, was to deliver them to the Great Council of the United States. This provision was contained also in the by-laws of the state council and in the constitution of Nokomis Tribe.

In 1919 Nokomis Tribe, with the consent of the state council, became incorporated under the laws of the State of Pennsylvania, obtaining a charter from the Court of Common Pleas No. 1 of Philadelphia County. The applicants in that proceeding testified that the Tribe was under the control of the state and national councils and was bound by the laws of the Order. The charter stated that one of the objects of the corporation was to accumulate, by means of dues and assessments, a sick and death benefit fund for members, or the widows or children or other heirs of deceased members, who were in good standing in the Tribe at the time of their sickness or death.

In 1936, Nokomis Tribe presented its petition to the court for voluntary dissolution. The court granted the petition, but decreed "that the property and assets of the said non-profit corporation shall be first transferred and delivered to the Great Council of Pennsylvania, Improved Order of Red Men, a Pennsylvania corporation, to be held by said Great Council for the use and benefit of the former members of Nokomis Tribe No. 307, who become members at large of the said Great Council in good standing." This latter provision referred to a law of the national council, also embodied in the tribal constitution, that the former members of a defunct tribe might become members of the Order at large under the jurisdiction of the state council, and, upon payment of dues, receive benefits similar to those they would have obtained had the tribe continued in existence.

Nokomis Tribe appeals from the decree on the ground that its assets should have been divided among its members and not turned over to the Great Council of the State.

It is clear, and apparently admitted by appellant, that if the dissolution of Nokomis Tribe had occurred prior to its incorporation in 1919, its property would have been deliverable to the Great Council of Pennsylvania,—not because of the Act of June 20, 1883, P. L. 132,[1] (which provides that upon dissolution of an unincorporated association for benevolent, charitable or beneficial purposes, its moneys, property and effects shall be delivered and paid to the parent or superior body, to be held for the purposes and intents for which they were held by the subordinate association), nor because a revocation of its charter would inevitably have the effect of vesting in the superior the property of the subordinate body,[2]—but because the laws of this Order, by which Nokomis Tribe was bound, provided for the delivery of the assets to the state council upon the dissolution of a tribe, to be held for the benefit of those entitled according to the laws and terms under which the funds were contributed: *Grand Castle, Knights of Golden Eagle v. Taylor,* 278 Pa. 9, 18. It was said in *Loyal Orange Institution v. Morrison,* 269 Pa. 564, 567: "When a number associate for the purpose of forming a body of this character, submitting themselves to certain rules and regulations, they inaugurate their own laws for government and agree to be bound thereby."

Appellant bases its right to a division of the funds among its present members solely upon the fact of its having become a corporation, and thereby subject to the provisions of the Act of May 5, 1933, P. L. 289. It claims that, under section 1001 of that act, the assets of

---

[1] *State Council Junior Order of United American Mechanics of Pennsylvania v. Emery,* 219 Pa. 461, 468.

[2] *Wolfe v. Limestone Council No. 373,* 233 Pa. 357, 362.

a nonprofit corporation are distributable among the members and that this provision is mandatory and supersedes any laws of the Order of Red Men to the contrary.

The court below found that after Nokomis Tribe obtained its charter of incorporation in 1919, it continued in all respects as before so far as its relations with the state and national councils were concerned, paying its per capita tax, electing its representative to the state council, using the name under which its fraternal charter had originally been granted, and, in general, maintaining its operation in accordance with the constitution and by-laws of the unincorporated association. As already stated, its charter from the State of Pennsylvania was obtained upon the representation that the Tribe was under the control of the parent bodies of the Order and subject to their laws. The incorporation effected a change, not of identity, but of legal form, and did not in any way affect the obligations to the state and national councils which the unincorporated body had originally assumed and which were inherent in the status of the Tribe as a component part of the fraternal organization: *Commonwealth v. Heilman*, 241 Pa. 374. What was said in that case (p. 385 and p. 390) applies equally to the present situation: "The object in this [the incorporation of the state council of the Junior Order of United American Mechanics] was not to sever the relations of the state council with the rest of the order but for certain purposes, to give it legal personality. In other words, the state council was left just as it was before incorporation except that it was endowed with corporate powers. . . . The act [incorporating the state council] did not create a new society, nor was it the foundation of a new organization. It simply gave corporate form to an unincorporated branch of a society already in existence. It was not intended to create a new society with a purpose different from that of the old order, but, on the other hand, the manifest intention

was to preserve the old order, and to make the incorporated branch an integral part of it." To the same effect is *Schriner v. Sachs,* 253 Pa. 611, 616.

Nor is there anything in the Act of 1933 inconsistent with these principles. Section 304 provides for two kinds of nonprofit corporations: those organized upon a nonstock basis, and those upon a stock share basis. It is only in the case of the latter that, upon dissolution of the corporation, the shareholders are entitled to a pro rata distribution of the assets. In section 1001, which applies to the voluntary dissolution of all nonprofit corporations, paragraph B (6) refers to the rights of the members of the corporation, *"if any,"* to share in the corporate assets, with apparent reference to the distinction made in section 304; and in paragraph C it is provided that the assets are to be marshalled and the property rights adjudicated, that property devoted to religious, literary, educational or charitable uses shall not be diverted from the objects for which it was donated or granted, and that the court shall order the distribution of the property and assets of the corporation among the members *"entitled thereto,"* and shall direct the disposition to be made of any real or personal property devoted to a religious, literary, educational or charitable use. Thus the act provides for division of assets among the members of the corporation only if they are entitled under existing law, and, so far from compelling distribution among them irrespective of all other facts and circumstances, expressly excludes property that, by the terms under which it was received by the corporation, should properly continue as a trust. In the present case, in ordering that the assets of Nokomis Tribe be delivered to the Great Council of Pennsylvania, the court decreed that they should be held by the state council for the use and benefit of the members of the Tribe who might become members at large in good standing, and for whose benefit, therefore, in sickness or death, the funds, according to the laws of the Order, had been

contributed. To allow the property to be divided among those who happen to be members of the Tribe at the time of its dissolution, instead of holding it as a benefit fund for those entitled, would be to violate the conditions under which the funds were accumulated, as well as the rules of the Order, the obligations of the Tribe, and the law of Pennsylvania as expressed in the cases hereinbefore cited.

The decree is affirmed; costs to be paid by appellant.