Grand Lodge of Independent Order of Odd Fellows of Pennsylvania et al., Appellants, *v.* Baker.

Argued December 16, 1959. Before HIRT, GUNTHER, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., and WRIGHT, J., absent).

*Henry Thomas Dolan*, with him *Theodore B. Smith, Jr.*, and *Henry Stuckert Miller*, for appellant.

*Thomas M. Garrity*, with him *Kiefer N. Gerstley*, for appellees.

OPINION BY ERVIN, J., March 24, 1960:

The controversy in this proceeding is over the distribution of the property of Odd Fellows Hall Association of Center Square (Hall Association), a corporation formed by special act of April 21, 1852, P. L. 391. Section 5 of that act provided: "That the object of said association shall be to provide, erect, and furnish a hall or suitable building or buildings at or near Center Square, in Whitpain Township, in the County of Montgomery, for the accommodation of various lodges and encampments of the Independent Order of Odd Fellows, and for other purposes." Plaintiff,

Grand Lodge of Independent Order of Odd Fellows of Pennsylvania (Grand Lodge), is an unincorporated association which was created by charter granted May 1, 1827, by the Sovereign Grand Lodge of the Independent Order of Odd Fellows of the United States. By said charter it was vested with exclusive power and authority within the Commonwealth of Pennsylvania to grant charters to subordinate lodges and other organizations of the Order for the propagation of the established principles of the Order, to reclaim the same and dissolve such lodges, to make such laws and regulations for the government and management of such subordinate lodges and other organizations in conformity with the general laws and regulations of the Sovereign Grand Lodge and generally to have and to exercise full power and authority to enforce upon such subordinate lodges and members thereof a strict adherence to such laws and regulations. Plaintiff is composed of one accredited representative from each subordinate lodge within the Commonwealth in good standing and certain other officers. In 1846 plaintiff granted a charter creating a subordinate lodge of the Order at Center Square, Pennsylvania, known as Center Square Lodge No. 204. From its inception until its termination this lodge was an unincorporated association. The charter of Lodge No. 204 granted by plaintiff recites that the lodge is formed "for the encouragement and support of brothers of the order when in sickness, distress or on travel, and for the purposes of benevolence and charity." On April 13, 1867 Hall Association acquired title to certain real estate in Center Square, Whitpain Township, Montgomery County, which it improved by erecting thereon a large hall building. The first and second floors of the building were improved as apartments and leased to tenants. The third floor of the building consisted of the lodge hall which was used by Lodge No. 204 regularly until

it ceased to exist. The lodge hall was rented to other organizations for their meetings somewhat frequently in the early 1900's but with decreasing regularity since 1927. Since 1930 such use by other organizations has been limited to two meetings by one organization. Until 1927 the defendant, Lodge No. 204, and Hall Association maintained a common treasury and in the financial reports made by the local lodge to the Grand Lodge there were included among its receipts rentals received from the apartments and there were included among disbursements the expenses of operating the building. Thereafter, through and including 1953, the financial records of the Lodge and of the Association were kept separately. None of the annual reports by Lodge No. 204 to the Grand Lodge show any amount in the line marked "Assets Invested in Hall Property." Lodge No. 204 never paid regular rent to the Association. Lodge records show only two payments so identified, one of $100.00 on April 3, 1928 and one of $140.00 on April 2, 1929. On June 12, 1947 plaintiff adopted a constitution providing, inter alia, as follows: "ARTICLE IX . . . Sec. 3. . . . b. Lodge Funds are trust funds and must be collected and disbursed in accordance with the provisions of the General Law of the Order and the Constitution and By-Laws of the Lodge. They cannot be divided among the members. Should a subordinate or Rebekah lodge dissolve or surrender its Charter, or the lodge be dissolved by the Grand Lodge or the Board of Grand Officers, its Charter be revoked or reclaimed by the Grand Master, such lodge shall be defunct and all the funds . . . and other property of the Lodge and Real Estate under Charter shall revert to and become the property of this Grand Lodge, in accordance with the General Laws of the Order and the Act of Assembly of June 20, 1883, P. L. 132; and such funds derived therefrom shall become a part of the Defunct Lodge Fund and be used as provided for in Article XIII of

this Constitution. . . . ARTICLE XIII DEFUNCT LODGE FUNDS All funds and other property received by the Grand Lodge from a subordinate lodge . . . which has been dissolved or declared to be defunct and also all amounts received from the sale of the assets or effects including its Real Estate thereof shall remain impressed with the trust originally imposed upon it when such trust was created; i.e., that it is to be administered for the benefit of all members of the Order in good standing who are members of the 'Grand Jurisdictional Lodge Fund.' . . . to be used for the purpose of paying sick, disability, and funeral benefits to the beneficiaries in said fund as hereinafter provided and generally to take and hold the same for the purpose and intents for which they were received and held by lodges before they were defunct. . . ."

Pursuant to the foregoing constitution of June 12, 1947, the plaintiff on the same day adopted a general form of constitution for subordinate lodges. No delegate of Lodge No. 204 was present at the convention when and where the said general form of constitution was adopted. The constitution was never adopted or ratified by Lodge No. 204. This form of constitution also provided that funds of the lodge are trust funds for the purpose for which they were created. In February 1952 Hall Association, by resolution, accepted $3,500.00 from the Commonwealth of Pennsylvania as settlement of its claim for land taken by eminent domain for the purpose of widening Skippack Pike. The Association actually received a net of $3,350.00 after payment of appraiser's fees and legal fees. In 1952, a motion was passed by Lodge No. 204 turning over to Hall Association two $1,000.00 U. S. bonds, describing this on its books as payment "for rent and services rendered in the past years." The annual reports of the Lodge to the Grand Lodge for the fiscal years ending September 1, 1947, 1948, 1949, 1950, 1951 and 1952

showed no liabilities. On November 19, 1952 the Hall Association conveyed the building and ground to which it held title for a gross price of $5,250.00 or a net price of $5,136.32. This conveyance was authorized by resolution of the members of the Hall Association at a meeting held on November 11, 1952. On December 3, 1952 the Hall Association ceased to exercise or discharge its corporate functions and purposes and on that day paid the sum of $550.00 to each of its 19 then living members, aggregating $10,450.00. These disbursements left on hand $163.34, to which there was an additional receipt of $35.50, or a balance of $198.84. This latter balance, by motion passed at a meeting of the Hall Association on January 6, 1953, was distributed as follows: to Lawyer Pearlstine, $100.00, and to President A. B. Robinson and Secretary H. L. Baker for their work in sale and settlement of the property, $98.84. All members of Lodge No. 204 automatically became members of the Hall Association. In January, April and May of 1953 the Grand Master of plaintiff demanded that the defendants deliver to the Grand Lodge all funds of Lodge No. 204, including those realized from the sale of the real estate formerly held by the Hall Association. Defendants refused to do so. Lodge No. 204 having ceased to exercise or discharge its functions, the Grand Master suspended its charter on May 12, 1953.

The court below filed an adjudication in which it found as a legal conclusion that Lodge No. 204 enjoyed neither legal nor equitable title to the real estate of the Hall Association and that restitution to plaintiff had to be limited to the amount of the two $1,000.00 government bonds, which it found were fraudulently diverted into the corporation treasury for distribution. The plaintiff filed exceptions to the adjudication and appealed after their dismissal and the entry of a final decree.

A number of questions were argued by the appellant, but one of which we find it necessary to discuss. We believe that the distribution of the assets effected by the appellees was in clear violation of the Nonprofit Corporation Law of May 5, 1933, P. L. 289, 15 PS §2851-1 et seq. The Hall Association was chartered for the purpose of providing a building for the accommodation of various lodges and encampments of the Odd Fellows. The Hall Association was not organized for profit and there was no provision for the issuance of stock to its members. It was incorporated for benevolence and charity and not for profit. It was argued by counsel for appellees that the Hall Association has never accepted the Constitution of 1874 and is therefore excluded from the operation of the Nonprofit Corporation Law of 1933. The filing of a certificate is not the only method of accepting the Constitution of Pennsylvania, referred to in §3 of the act. It is well established that a corporation is understood to have accepted the Constitution of Pennsylvania by accepting the benefit of some legislation under the Constitution: *Hays v. Commonwealth*, 82 Pa. 518; *Ahl v. Rhoads*, 84 Pa. 319; *Penna. R.R. Co. v. Langdon*, 92 Pa. 21; *Baker's Appeal*, 109 Pa. 461; *Williamsport Pass. Ry. Co. v. Williamsport*, 120 Pa. 1, 13 A. 496; *Gloninger v. Pittsb. & C. R. Co.*, 139 Pa. 13, 21 A. 211. The principle is succinctly enunciated in *Williamsport Pass. Ry. Co. v. Williamsport*, supra, at page 13: "Charters of private corporations are left exactly as the new constitution found them, and so they must remain until the companies holding them shall enter into a new contract with the state by accepting the benefit of some future legislation." As to the acceptance of the benefits of some future legislation, art. XVI, §2 of the Constitution of 1874, provides: "The General Assembly shall not remit the forfeiture of the charter of any corporation now existing, or alter or amend the

same, *or pass any other general or special law for the benefit of such corporation, except upon the condition that such corporation shall thereafter hold its charter subject to the provisions of this Constitution.*" (Emphasis supplied)

In February 1952 the Hall Association accepted from the Commonwealth of Pennsylvania the sum of $3,500.00 as compensation for land taken by the Department of Highways for state highway purposes. The only way the corporation could possibly be entitled to receive any such money for the taking of mere land of which it was title-holder of record is §304 of the State Highway Law of June 1, 1945, P. L. 1242, 36 PS §670-304. In *State Highway Route No. 72,* 265 Pa. 369, 372, 108 A. 820, the Court said: "In the original allotment of public lands six per cent was allowed for highways, which seems to be the reason for the well-settled rule that in the opening and improvement of public roads the landowner is entitled only to such redress as is given by statute, for his claim is a matter of grace and not of constitutional right: . . . . [citations omitted] The Commonwealth in the construction of public highways is in exercise of its sovereign authority and never liable for damages unless made so by express enactment." This doctrine is limited, however, to land in its natural state, and where buildings are pulled down or other valuable improvements destroyed in the making of a new road the right of compensation is guaranteed to the owner by the Constitution: *Plank-Road Co. v. Thomas,* 20 Pa. 91, quoted in *State Highway Route No. 72,* 71 Pa. Superior Ct. 85, 89. The land taken by the State from the Hall Association by eminent domain proceedings was mere land and not buildings. When it received the damages for the taking of the land it accepted the legislative grace extended to it by the State Highway Law of 1945 and in so doing, of necessity, accepted the Constitution of 1874.

Within the clear and express intendment of §3 of the Nonprofit Corporation Law of 1933, it thereby also subjected itself to that Act.

Counsel for the appellees also argues that the Act of 1933 did not apply to this situation because of §4 (15 PS §2851-4), as follows: "This act does not relate to, does not affect, and does not apply to— . . . (2) Beneficial, benevolent, fraternal or fraternal benefit societies, having a lodge system and a representative form of government, or transacting any type of insurance whatsoever." It is clear, however, that the Hall Association is not a fraternal society having a lodge system. In *Greek Catholic Union Charter Amendment Case*, 332 Pa. 424, 3 A. 2d 410, it was held that nonprofit corporations covered by the Act of 1893, and so excluded from the 1874 and 1933 legislation, are those whose purpose is to grant subordinate lodge charters, etc. If any such corporation improperly has secured a charter under the Act of 1874, despite provisions of the Act of 1933 that any 1874 nonprofit corporation is governed by it, the exclusion of §4 is still effective and shuts it out, the particular overruling the general. It is clear, therefore, that the Hall Association was subject to the dictates of §1001 of the Act of 1933, which section reads in part as follows: "Before entering the final decree of dissolution, the court shall cause the assets of the corporation to be marshaled and the property rights to be adjudicated, either by proceedings before the court or before a master appointed by it, *provided that property devoted to religious, literary, educational, or charitable uses shall not be diverted from the objects for which it was donated, granted, bequeathed or devised.* In entering the final decree, the court shall order the distribution of the property and assets of the corporation among the members entitled thereto, *shall direct what disposition shall be made of any real or personal property devoted to any religious,*

*literary, educational or charitable use,* and shall designate the directors of the corporation, or, having proper cause, a liquidating trustee, to wind up the affairs of the corporation according to the decree of the court." (Emphasis supplied)

In *Nokomis Tribe Red Men Dissolution Case,* 331 Pa. 53, 200 A. 23, the local lodge had itself incorporated and defended its division of assets on the ground it was the free act of an independent corporation. It was held to be expressly subject to §1001 of the Act of 1933. In that case Justice, later Chief Justice, HORACE STERN pointed out that the only persons who could receive anything in distribution from a nonprofit corporation would be stockholders. There were no stockholders in the Hall Association and the Act of Assembly under which it was created provided for none. If the members of a nonprofit corporation of this type cannot divide the property upon dissolution, it certainly may not do so while it remains in existence. It would be an absurdity to believe that the members of a subordinate body could flatly defeat the requirements of the statute law by simply selling all the assets of the corporation and dividing the proceeds before surrendering the charter of the corporation. There is nothing to indicate in this record that the defendants intended to continue to discharge a trust and they have made this impossible by a total distribution of all the assets of the Hall Association. The court below should have enforced the trust with which these funds remained impressed.

Counsel for appellees argues that "Accordingly, even if it is assumed, arguendo, that the Hall Association has accepted the Constitution of Pennsylvania and is, therefore, subject to the Nonprofit Corporation Law of 1933, the question as to whether its actions were or were not ultra vires within the meaning of that Act is not an issue in these proceedings." It argues that

it is not within the province of the plaintiff to challenge the acts of an independent corporation any more than it would be the plaintiff's prerogative to challenge the action of General Motors or any other profit corporation. We cannot agree with this argument. The court below sat as a chancellor and was being asked to control the disposition of assets imposed with a trust. It seems to us that it should have complied with this request even though the Commonwealth or the Attorney General had not appeared before it. The plaintiff was a proper body to receive and administer these funds. It had provided all of the machinery necessary therefor and was thoroughly acquainted with the purposes for which the funds had been created.

Decree is reversed and the record is remanded to the court below for the entry of a decree in accordance with the reasoning of this opinion.

RHODES, P. J., and WRIGHT, J., did not participate in the consideration or decision of this case.