479 A.2d 544

**GRAND LODGE OF PENNSYLVANIA INDEPENDENT ORDER OF ODD FELLOWS by Fred M. SEE, Edward W. Brinkley, Substitute For Charles Moses, Deceased, and Willis G. Robinson, Trustees Ad Litem, Appellants,**

v.

**VAN CAMP LODGE NO. 140 IOFF, and Odd Fellow Hall Association of Bloomsburg, Pennsylvania, A Non-Profit Corporation and Robert G. Seagers, John E. Beagle, Wilman Kitchen, James G. Law, Harold Moyer and Paul Sharpless.**

Superior Court of Pennsylvania.

Argued Nov. 3, 1983.

Filed June 22, 1984.

Petition for Allowance of Appeal Denied Oct. 3, 1984.

268

Felix DeGuilio, Pittsburgh, for appellants.

Gailey C. Keller, Bloomsburg, for appellees.

Before WICKERSHAM, WIEAND and CERCONE, JJ.

WIEAND, Judge:

Van Camp Lodge No. 140, Independent Order of Odd Fellows, an unincorporated association (Lodge 140) and The Odd Fellows Hall Association of Bloomsburg, Pennsylvania, a Pennsylvania non-profit corporation (Hall Association) sold Lodge 140's meeting hall without the approval and consent of the Grand Lodge of Pennsylvania, Independent Order of Odd Fellows (Grand Lodge). The Grand Lodge thereupon caused Lodge 140 to be suspended and commenced an action in equity to impose a trust upon the proceeds of the sale. When the trial court held that the

Hall Association was not bound by the by-laws of the governing body and that the Grand Lodge was not entitled to assert any rights to the proceeds of the sale of the meeting hall, this appeal followed. We reverse.

The meeting hall had been acquired in 1928. Title to the real estate was immediately placed in the Hall Association. The first floor of the building was leased for commercial purposes; the second floor was leased as residential apartments; and the third floor was used as a meeting hall and for miscellaneous purposes by the members of Lodge 140. On September 29, 1979, the building was conveyed to Dennis and Cynthia Williams. When, in June, 1980, the Grand Lodge learned that the building had been sold without its prior approval and suspected that the proceeds were to be distributed to and among the remaining members of Lodge 140, the Grand Lodge suspended the local lodge's charter on July 3, 1980. The books, records, rituals, etc. of Lodge 140 were surrendered to the Grand Lodge, but the members of Lodge 140 determined to deliver the proceeds of the sale to the Bloomsburg Hospital. This action was commenced to recover those proceeds.

The Independent Order of Odd Fellows is an international benevolent association structured in a three tiered hierarchy of lodges. The Sovereign Grand Lodge is the international governing body which has promulgated the General Laws of Odd Fellows under which all subordinate lodges exist. The Sovereign Lodge chartered the Grand Lodge of Pennsylvania, which has jurisdiction over local lodges in Pennsylvania. Lodge 140, in turn, was chartered as a subordinate lodge by the Grand Lodge.

The Code of General Laws adopted by the Sovereign Grand Lodge on September 15, 1915, as revised in 1925, was in existence at the time the meeting hall was purchased by Lodge 140. Relevant sections of Chapter 12, entitled "Property," provided as follows:

Sec. 853. The subordinate bodies of the Order shall have the right to own and hold, for the uses and purposes of the order, both real and personal property, subject to

such regulations and conditions, not inconsistent with the laws of the Order as may be prescribed by the respective Grand Bodies having jurisdiction over them.

Sec. 854. No subordinate body of the Order shall have power or authority to dispose of its real or personal property and dissipate or distribute the same for the purpose of defeating the reversionary interest of the Grand Body, having jurisdiction over it, in such property, nor shall a subordinate body have power or authority to sell, convey or otherwise dispose of its real or personal property except for the purpose of applying the proceeds thereof to the uses and purposes of the Order.

Sec. 856. All real and personal property owned by a subordinate body of the Order, shall, in the event that such subordinate body, whether incorporated or unincorporated, shall become defunct, pass to and vest in the Grand Body having jurisdiction over such subordinate.

Relevant sections of the Sovereign Grand Lodge's Constitution and Code of General Laws, dated 1977 and in effect at the time when the Bloomsburg meeting hall was sold, were also introduced into evidence. They were similar to the general laws in effect when the meeting hall was purchased but contained additional language clarifying the subordination of local lodges to the general laws of the order. The Constitution of the Grand Lodge, dated 1931, was received into evidence and relevantly provided:

b. Lodge Funds are trust funds and must be collected and disbursed in accordance with the provisions of the General Law of the Order and the Constitution and By-Laws of the Lodge. They cannot be divided among the members. Should a subordinate or Rebekah lodge dissolve or surrender its Charter, or the lodge be dissolved by the Grand Lodge or the Board of Grand Officers and its Charter be revoked or reclaimed by the Grand Master, such lodge shall be defunct and all the funds, paraphernalia, books, papers and other property of such lodge shall revert to and become the property of this Grand Lodge. In accordance with the General Laws of the Order and

the Act of Assembly of June 20th, 1883, P.L. page 132, and such fund shall become a part of the Defunct Lodge Fund and be used as provided for in Articles XI and XII of this Constitution.

Finally, the Constitution of Lodge 140, approved by the Grand Lodge in 1931, provided in relevant part as follows:

Art. XXIII. Sec. 2. Lodge monies are trust funds and ... any division of the funds of the Lodge is illegal and will be regarded by the Grand Lodge as a breach of trust. Sec. 3. The Lodge has jurisdiction over its financial affairs so long as it acts in obedience to the provisions of its warrant or dispensation and to the provisions of this Constitution, to the Law of the Order, and to the mandates of the Grand Lodge....

Art. XXIV. Should this Lodge become defunct or surrender its charter, or its charter be declared forfeited, it shall be the duty of the Noble Grand, ... to immediately deliver to the Grand Master, ... every species of property and assets—including the Charter and all books, papers, funds, and property of every description belonging to the Lodge ... and such funds, moneys and all effects of a defunct Lodge shall be disposed of by the Grand Lodge as it may direct.

These provisions were binding upon the members of Lodge 140, a subordinate body. See: *Pennsylvania State Camp, Patriotic Order Sons of America v. Washington Camp No. 250*, 385 Pa. 503, 506, 123 A.2d 705, 707 (1956); *Nokomis Tribe No. 307, Improved Order of Red Men of Pennsylvania Dissolution Case*, 331 Pa. 53, 54–56, 200 A. 23, 24–25 (1938); *Carlin v. Ancient Order of Hibernians*, 54 Pa.Super. 512, 524 (1913). See also: *Grand Lodge of New Hampshire, I.O.O.F. v. Union Lodge No. 32 of Deerfield, New Hampshire, I.O.O.F.*, 111 N.H. 241, 279 A.2d 590 (1971); *Grand Lodge of I.O.O.F. of New Jersey v. Wieland Lodge No. 113, I.O.O.F.*, 93 N.J.Eq. 129, 115 A. 205 (1921).

The trial court found that the Grand Lodge had failed to prove its by-laws as they existed in 1928 and concluded, therefore, that Lodge 140 was not required to

recognize the Grand Lodge's claim to its assets. This was erroneous. When Lodge 140 adopted a constitution containing the provisions of the general laws of the Grand and Sovereign Grand Lodges, it ratified the constitution and by-laws of the parent organizations as they then existed. Even if the provisions regarding the Grand Lodge's property rights were not previously binding upon Lodge 140, they became binding by virtue of this ratification. *Polish Falcons of America v. American Citizens Club for Poles of Natrona,* 338 Pa. 218, 220–221, 13 A.2d 27, 29 (1940). See also: *Grand Lodge of New Hampshire, I.O.O.F. v. Union Lodge No. 32 of Deerfield, New Hampshire, supra.* General laws of the Sovereign Grand Lodge were also applicable. These laws have at all times, then and now, provided the machinery necessary for administering funds collected from defunct lodges for the benefit of those members who wished to continue as members of the Odd Fellows. The decisions are uniform that the general laws of the order under such circumstances are superior to the wishes of the members of subordinate bodies and determinative of the rights in and to property owned by such subordinate bodies. See: *Pennsylvania State Camp of The Patriotic Order Sons of America v. Washington Camp No. 669,* 385 Pa. 501, 123 A.2d 707 (1956); *Pennsylvania State Camp, Patriotic Order Sons of America v. Washington Camp No. 250, supra; Pennsylvania State Camp, Patriotic Order Sons of America v. Washington Camp No. 135,* 385 Pa. 492, 123 A.2d 701 (1956); *Nokomis Tribe No. 307, Improved Order of Red Men of Pennsylvania Dissolution Case, supra; Grand Castle, Knights of Golden Eagle v. Taylor,* 278 Pa. 9, 122 A. 210 (1923); *Grand Lodge of New Hampshire, I.O.O.F. v. Union Lodge No. 32 of Deerfield, New Hampshire, I.O.O.F., supra; United States Sav. Bank of Newark v. Schiller Lodge No. 66, F. & A.M.,* 117 N.J.Eq. 460, 176 A. 330 (1935). This principle is embodied in the Act of June 20, 1883, P.L. 132, § 1, 10 P.S. § 111.[1]

1. The statute provides:

■ It is argued, however, that these principles are not determinative because in this case the building was owned by the Hall Association, a separate corporation. There is no merit in this contention. The Hall Association is wholly owned by Lodge 140 and is merely one of its assets. The charter of the Hall Association provided that its purposes were "to provide, erect and furnish a Hall or suitable building or buildings in the town of Bloomsburg, Pa. for the accommodation of various lodges and encampments of the

The funds and effects of unincorporated associations for benevolent, charitable or beneficial purposes, constituted or organized under any warrant or charter granted by any association recognized or acknowledged as the parent or superior body, where the rules and regulations of such parent or superior body require that, upon the dissolution, expulsion, surrender of warrant or charter, or vacation of the same by such parent or superior body, the moneys, property and effects of such subordinate association shall be delivered and paid to the parent or superior body, are hereby declared to be trust property, and it shall be unlawful for any such subordinate association to divide or distribute the moneys, property or effects, or any part thereof, to and among the members of such subordinate association, or any member thereof, either directly or indirectly, or by way of donation; but all such moneys, property and other effects of such subordinate associations, upon the dissolution, expulsion, surrender of warrant or charter, or vacation of the same by the parent or superior body for which they have obtained the warrant or charter, under which they have been constituted or organized, shall be paid and delivered to the proper officers of such parent or superior body; and in case any such subordinate association shall or may have made any division or distribution of the moneys, property or effects held by such subordinate association, or any part thereof, to or among the members thereof, or any number of them, either directly or indirectly, the principal officers or trustees of the parent or superior body, to the use of such parent or superior body, may recover such moneys, property or other effects so divided or distributed contrary to the provisions of this act, from the person or persons to whom the same, or any part thereof, shall or may have been paid or delivered; and the several courts of equity of this commonwealth are hereby vested with full power and authority to enforce the provisions of this act, as in other cases within their jurisdiction. And the said parent or superior body to whom any moneys, property or other effects of such subordinate association shall be paid and delivered, shall take and hold the same for the purposes and intents for which they were received and held by such subordinate associations: Provided however, That all suits commenced or brought to enforce the provisions of this act shall be commenced or brought within two years next after the time when such division or distribution shall have been made. 1883, June 20, P.L. 132, § 1.

Independent Order of Odd Fellows established or to be established there, or to lease suitable buildings for said purposes." The charter provided further that "[t]he membership of this Association shall consist of members of the Van Camp Lodge No. 140 of Bloomsburg, Pa." Both Lodge 140 and the Hall Association adopted names suggesting an Odd Fellows affiliation. The Hall Association did not charge and Lodge 140 did not pay rent for use of the building. Moreover, the Hall Association held no meetings, conducted no elections, and had no board of directors. It seems clear, therefore, that Lodge 140 could not and did not put title to its real estate beyond reach of the internal laws of the Sovereign Grand and Grand Lodges merely by creating a separate corporation which held title to its real estate. The issue is not one of piercing the corporate veil, as appellees seem to think, but ultimate and actual ownership of assets. The corporation and its assets, including the meeting hall, were owned by Lodge 140 and its members. Therefore, the hall could be disposed of only in accordance with the internal laws of the Order. Disposition of the subordinate body's property in accordance therewith could not be avoided by placing title to the property in a separate, wholly owned corporation.

 It has also been argued that Lodge 140 is not defunct but merely suspended and that, therefore, it can distribute its assets to whomever it selects. This argument also lacks merit. If the members of the lodge cannot divide the property upon dissolution, it certainly may not do so while it remains in existence. Sale of the real estate owned by a lodge cannot properly be effected without approval of and consent by the Grand Lodge. It would be an absurdity to believe that the members of the subordinate body could defeat the trust imposed upon their assets by simply selling those assets and dividing the proceeds before surrendering their charter and ceasing to exist. See: *Grand Lodge of Independent Order of Odd Fellows v. Baker*, 192 Pa.Super. 14, 159 A.2d 552 (1960).

■ Lodge 140 has now ceased to exist, and appellees are not attempting to establish a new lodge. Therefore, the assets held by the Hall Association must be channelled in accordance with the purpose for which they were accumulated. They must be transferred to the parent body, in this case the Grand Lodge, to be used to continue the purposes of the Order of Odd Fellows. The rights of the Bloomsburg Hospital, although appealing, are derivative of and no greater than the rights of the individual members of Lodge 140. Because the Hospital's claim to the proceeds is dependent upon the wrongful attempt by the members of the lodge to divert the lodge's assets from the parent organization, the Hospital's claim must yield to the superior rights of the Grand Lodge.

Reversed and remanded for the entry of a decree in accordance with the foregoing opinion.