Flaherty, Admx. *v.* Manufacturers' Club of
Philadelphia, Appellant and Schuyler,
Excx *v.* Same, Appellant.

Argued October 27, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Joseph W. Henderson,* and with him *Thomas F. Mount, John H. Lucas* and *Joseph A. Slattery,* for appellant.

*Wm. Y. C. Anderson,* and with him *Albert J. Taylor,* for appellee.

Opinion by Linn, J., March 5, 1932:

These appeals, raising the same legal question, were argued together. Defendant is the Manufactures' Club of Philadelphia, organized under the general incorporation act of 1874, P. L. 73, in the class specified in section 2, clause VI, for "the maintenance of a club for social enjoyment."

Flaherty, whose administratrix is plaintiff in one case, and Schuyler, whose executrix sues in the other, became life members of the club with certificates of membership in the following form: "Certificate of life membership, Number 16, June 17, 1920. Manufacturers' Club of Philadelphia. Walter R. Flaherty having paid in the sum of twelve hundred and fifty dollars ($1,250) to the Manufacturers' Club of Philadelphia, is hereby entitled to all privileges of resident membership in the Manufacturers' Club, subject to its by-laws, rules and regulations, and is exempt from payment of any further dues or tax during his life; at his death, the said Manufacturers' Club hereby agrees to re-pay to his legal representatives the said sum of twelve hundred and fifty dollars ($1,250) without interest. In case of resignation by reason of removal beyond the limit required for resident membership, the said Walter R. Flaherty shall have the privilege of transferring this life membership to another resident member acceptable to the board of directors. Thomas F. Armstrong, secretary. Alfred E. Burk, president." The corporate seal is affixed.

In the statement of claim, after averring the organization of the club, and the creation of life-memberships, the decease of the member, etc., plaintiff avers that she made demand for the payment of $1,250 and that it was refused. The affidavit of defense admits all that, and makes additional averments under the heading "new matter." It is sufficient for present purposes to say that this consisted of averments that

1156 life-membership certificates of this character exist, though in some the obligation is to pay only $1,000 instead of $1,250; that, of the total, 79 are held by legal representatives of deceased members with claims similar to that of plaintiff; that the proceeds received from these certificates became part of the general assets of the club and were used to erect and maintain the club house; that no sinking fund or other special account was provided out of which such obligations might ultimately be payable; that the club has no "liquid assets sufficient to pay its obligations to merchandise creditors or bank loans, nor has it possessed sufficient cash to pay the claims of the representatives of 79 deceased life members, which claims amount in the aggregate to $80,250. If the defendant were compelled to pay to the legal representatives of deceased life members the amount of such claims, to wit, $80,250, it would be necessary to dispose of part of the building and fixtures of the defendant, and thereby materially hinder the maintenance and operation of said club. As of September 30, 1930, the defendant was indebted in a sum in excess of $282,000 for unsecured bank loans, taxes, interest, accounts payable and costs of operation. For the year 1930, the income of defendant from all sources was insufficient to pay its operating costs and fixed charges for the same period of time. The defendant does not now possess sufficient liquid assets with which to pay its unsecured creditors." It was also averred that if the claims of the estates of all these deceased members are now paid the club will be insolvent; that defendant's obligation to repay, as provided in the certificate, is ultra vires "to the extent that said promise is absolute and unconditional." A rule for judgment for want of a sufficient affidavit of defense was made absolute.

Nothing appears in the record that would enable

this court to say that the contract is ultra vires; there is no averment to contradict the prima facie showing made in the statement of claim that the life-memberships were created and the certificates issued in accordance with the law of the club. There is nothing in the statute which prevents the creation of life-memberships; such classification of membership is common in social clubs; if the agreement to pay to such deceased member's estate is unusual, we have not been referred to any prohibition of the right to incur the obligation.

The parties present two views of the meaning or effect of the certificate. The club contends that, as the obligation to pay to a deceased member's estate rises out of the membership, the estate is not a general creditor, but one whose claim must be postponed until "the club has liquid assets in the nature of surplus earnings or surplus revenue with which to pay them." We are not certain what is meant by that, and perhaps need not inquire, considering the averment that the club is insolvent or will be insolvent if the amount due on such matured certificates must now be paid. In that view, the club contends that such matured certificate holders are special creditors who may claim payment only after general creditors are paid. We do not consider that contention sound, but if it were, it would have to do with the distribution of the assets and not with the question before us, which is whether cause has been shown why summary judgment should not be entered; the question when execution may be issued and how, if at all, it shall be controlled, is not before us now.

On the other hand, appellee contends that the certificate is mere evidence that the club " ...... held a certain sum of that decedent's money, for the use of which during his life the decedent was exempt from club assessments dues and taxes in lieu of interest;

at his death that sum certain was to be paid without interest, to the executor or administrator of the decedent's estate." But that is an inadequate description of decedent's relationship to the club. He had all the rights of a life-member with such member's equal undivided share in all its property; he could have claimed it on dissolution during his lifetime; the club was not holding the member's money; it was paid to the club once for all for the consideration specified.

The relation of those composing a corporation of either class, whether called stockholders, as in a corporation for profit, or members, as in a corporation of the second class, and their rights in, and obligations concerning corporate property, are defined in the law of the state and in the charter, constitution, and by-laws of the corporation. Generally, in social clubs, it is provided that a member's right to corporate property ends with his death, and such contract is enforced: Nelson's Est., 92 Pa. Superior Ct. 198. The member, during life, is a part owner of its property, not a creditor, (cf. Moy v. Colonial Finance Corp., 283 Pa. 323, 326); but on his death, his interest as member of the club ceases, and, pursuant to certificates like those before us, the obligation to pay matures. Special contracts between a club and its members concerning corporate property may be made for club purposes and will be given effect: Rau et al. v. Torresdale-Frankford Country Club, 87 Pa. Superior Ct. 153; Rollins v. Denver Club, 43 Colo. 345; 96 Pac. 188. The right of distribution of club property by sale to members without discrimination has been upheld, both in this state (Klein v. Livingston Club, 177 Pa. 224) and in England (see Title, Clubs, Vol. 4 Halsbury's Laws of England). The member's right to enjoy club property free from improper interference by a fellow member, and the member's obligation to conduct himself

with propriety in the club house, are well settled: Com. ex rel. v. Union League, 135 Pa. 301.

The appellant club claims support for its contention under the rule applied in three classes of cases dealing with the rights of holders of (1), preferred stock; (2), building and loan association shares; (3), certain classes of beneficial society certificates.

The postponement of the preferred stock holder to the general creditor results from specific statutory limitations governing the issue of the preferred stock. In the case relied on by the appellant, Warren v. Queen, 240 Pa. 154, the plaintiff was a preferred stock holder, not a creditor. For that reason he could not show a case for redemption of his shares within the statutory conditions governing their issue, and was, therefore, not entitled to judgment for want of a sufficient affidavit. The building and loan association share-holders have been put into a class by themselves, described as statutory partners, from which it results that withdrawing stockholders are said to be "only creditors within a qualified sense" (Christian's Appeal, 102 Pa. 184; Brown v. Victor B. & L. Assn., 302 Pa. 254, 259; Stone v. Schiller B. & L. Assn., 302 Pa. 544, 553). Even in such case, if a withdrawing stockholder gets judgment he will be restrained from execution on the judgment if the effect will be to render the association insolvent and to prefer him. Nor does the Fraternal Beneficial Society case relied on, Hagerling v. Pension Mut. Life Ins. Co., 68 Pa. Superior Ct. 170, sustain appellant's contention, because it was distinctly held that the defendant lacked corporate authority to issue the certificate containing the return value contract sued on.

We are all of opinion that judgments for want of a sufficient affidavit of defense were properly entered. No. 395 judgment affirmed. No. 394 judgment affirmed.

This opinion was written by Judge LINN prior to his appointment to the Supreme Court, and has been adopted as the opinion of this court. F. M. TREXLER, P. J.