Kensington National Bank et al., Trustees, Appellants, *v.* Cedarbrook Country Club et al.

Argued July 16, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*George T. Steeley* and *Henry L. Schimpf, Jr.,* for appellants.

*Lewis H. VanDusen, Jr.,* with him *Philip Wallis* and *Henry S. Drinker,* for appellees.

OPINION BY DITHRICH, J., September 30, 1947:

In July, 1945, Temple University of Philadelphia made the Cedarbrook Country Club, hereinafter referred to as the "Club," an offer for the purchase of its property consisting of 172½ acres of ground with improvements situated at City Line and Limekiln Pike, Montgomery County, for a cash consideration of $600,000.

The president of the Club, acting on the advice of counsel, notified all *members* and all holders of proprietary certificates of the Club who were *not* members that a meeting would be held for the purpose of considering the offer, but that only proprietary members, i. e., members holding proprietary certificates and also paying the dues required of proprietary members, would be entitled to vote upon the question.

Plaintiffs, all of whom are holders of proprietary membership certificates, some of the holders being the personal representatives of deceased members and the

others being former members who have resigned from the Club, brought this bill in equity seeking to enjoin the Club and its officers from rejecting said offer of Temple University until it could be judicially determined whether holders of proprietary membership certificates, who are not dues-paying members and/or the representatives of deceased holders of proprietary membership certificates, are and should be entitled to vote on the question of the sale of the real property of the Club to the university. The bill was dismissed and this appeal was then brought by John Zimmerman, Jr., who on or about the fourteenth day of May, 1925, became a proprietary member of the Club and paid the Club the sum of $1,000 for a proprietary membership certificate and also paid the dues, initiation fees and other charges which were then required to be paid by proprietary members, until during or about the year 1927, at which time he ceased to be a dues-paying member of the Club.

As stated in the learned chancellor's adjudication under the heading

## "DISCUSSION

"The question involved is whether holders of Proprietary Certificates of Cedarbrook Country Club, who are not now members, are entitled to vote at a meeting to accept or reject an offer to purchase the Club property. The plaintiffs contend that, as holders of Proprietary Certificates, their right is a vested one in the property of the Club, and since the meeting pertains to the sale of the Club's property, they are entitled to vote, although they are not members but only representatives of former members now deceased, or are former members who resigned. The fallacy behind this concept is that the title to the property is vested in the non-profit corporation; the right of holders of Certificates is not a property right, but depends upon the contract of the Certificate and must be judged in accordance with its terms.

"In considering the rights of the holders of the Proprietary Certificates we must keep in mind that the subscription was primarily a contribution toward the establishment of a non-profit corporation for the purpose of maintaining a golf club. The subscription was not an investment in a real estate project, to be sold when a favorable opportunity was presented; nor was it a lien upon the real estate; nor a debt to be paid at a specific time. That which the holders received was a contract which, by its terms, was specifically subject to the By-Laws and to changes in the By-Laws that might be made from time to time. Thus the right granted could be revoked or changed. (See Moon vs. Locomotive Engineers Ins. Ass'n., 343 Pa. 472.) These By-Laws have been changed to meet the economic necessities of the times, and to perpetuate the golf club in accordance with the purpose expressed in the Charter."

The offer to purchase the property expired on January 27, 1946, so that the original issue is now moot. A determination of the rights of the holders of the proprietary certificates and the duties of the Club to them depends upon the contract which they entered into with the Club when the certificates were issued, the terms of which are contained in the certificates and in the by-laws. All proprietary membership certificates were issued in the form set out in the by-laws, and each purchaser at the time he received his certificate acknowledged in writing that the certificate was issued and accepted by him "subject to the terms therein mentioned, and to the By-Laws of the said Club now in force to which I subscribe and to any amendments hereafter made to said By-Laws."

In *Flaherty v. Manufacturers' Club of Phila.*, 104 Pa. Superior Ct. 546, 159 A. 209, this court speaking through Judge, now Mr. Justice, LINN said (p. 551) : "The relation of those composing a corporation of either class, whether called stockholders, as in a corporation for profit, or members, as in a corporation of the second

class, and their rights in, and obligations concerning corporate property, are defined in the law of the state and in the charter, constitution and by-laws of the corporation." And in *Hayes v. German Beneficial Union,* 35 Pa. Superior Ct. 142, this court said (p. 147) :

"It must be conceded that the defendant, like every other corporation, possessed the inherent power of self-government. Its by-laws are the channels through which this power is exerted and declare the corporate will as to the manner in which the corporate functions are to be exercised and such other matters as to which it may properly and lawfully legislate. Of course the power to make such laws carries with it the power to alter and amend them in the manner prescribed. Voluntary acceptance of membership in such corporation necessarily involves and implies the assent of each member to every amendment to the by-laws the substance of which is the proper subject of such law, and which has been formally and regularly adopted."

See also *Moon v. Loc. Engrs. Ins. Assn.,* 343 Pa. 472, 23 A. 2d 474; *Linaka v. Firemen's Pension Fund,* 149 Pa. Superior Ct. 458, 27 A. 2d 501; *Gordon v. Tomei,* 144 Pa. Superior Ct. 449, 19 A. 2d 588.

In the light of the foregoing authorities it is abundantly clear that under the provisions of the by-laws and. the certificates which constitute the contract between the Club and the holders of the certificates, the latter are not entitled to vote on any question affecting the proprietary interests of the Club. Such action can be taken only by the present dues-paying proprietary members. A clear distinction is made in the by-laws between proprietary members and the holders of proprietary membership certificates. In Article III, section 2, it is provided that "This [proprietary] certificate is transferable by the holder or his legal representative upon the termination of his *membership*" (emphasis added), and section 3 provides that "Certificates of Membership may be transferred by the *holder* or his legal represen-

tative, upon the termination of his *membership*" (emphasis added). Section 7 of Article III, since repealed, gave certain rights to the "holder of a certificate" after he had ceased "to be a member"; and in Articles III and IV it is provided that "holders" pay interest on their certificates, whereas "members" pay dues for the privileges of membership.

Appellees concede that "had [they] decided to liquidate the golf club and were attempting to sell the Club property without admitting the appellants to some share of the proceeds, a wholly different case would be presented."

But since the only question presently involved is the right of the holders of proprietary certificates to vote on the acceptance or rejection of an offer to purchase the property, the offer which gave rise to this suit having been rejected, a determination of their right to share in the proceeds in the event of a sale of the property is not necessary to a decision in the instant case.

Decree affirmed.