DeChamplain, Appellant, *v.* P. & R. Home Association.

Argued March 25, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Clarence C. Mendelsohn,* with him *Joseph E. De Santis,* for appellants.

*Charles H. Weidner,* with him *Philip F. Schmehl,* for appellees.

OPINION BY DITHRICH, J., July 17, 1952:

The corporate appellee, P. & R. Home Association, is a nonprofit corporation, incorporated September 6, 1921, under the Act of April 29, 1874, and supplements thereto. It was organized on a nonstock basis for the purpose of maintaining a club for social enjoyment, but at no time was such a club maintained. Its membership was limited to those employes of the Philadelphia and Reading Railway Company, who were also members of Subordinate Lodge No. 168, American Federation of Railroad Workers. A portion of the monthly dues paid to the Lodge by its members was paid over to the Association. Between 1921 and 1942, the year the Lodge was dissolved, the Association received $16,289.67 in dues payments. After dissolution of the Lodge the members continued to pay dues to the Association at the rate of $1 each month. From 1942 to 1950 the amount of the dues paid was $5,337.50.

The Association operated a plan for many years whereby "funeral benefits" were paid to the heirs of deceased members. At a special meeting on March 7, 1946, section 5a of the by-laws was adopted, which provided: "On and after May 1, 1946, . . . when a member has paid his dues in full and has become beneficial for the total amount of funeral donations prescribed in

his particular case . . . he shall discontinue paying monthly dues and he shall remain in good standing— which will cease when a full or partial division of the funds of the Association are made among its members . . ." At the same meeting a plan was adopted for final distribution of the assets of the Association among its members "on a basis for each month a member has been a member of the association." In accordance with section 5a appellants and other members of the Association were notified on March 26, 1946, that they were beneficial for death benefits and would remain so indefinitely without paying dues.

A regular meeting was held June 8, 1950, at which the members present unanimously adopted a resolution to discontinue payment of death benefits, effective August 1, 1950, and to substitute in lieu thereof a division of Association funds among its members or their heirs "in accordance with action taken March 7, 1946." The action was confirmed at a special meeting held July 20, 1950, without opposition, upon motion "that this be considered the 3rd and final reading, and that it be adopted as read."

A meeting of the trustees and officers of the Association was held October 3, 1950. It was there agreed that the first distribution of funds of the Association be made on a basis of 95 cents per month for the period during which a member had been continuously beneficial. The determination of the trustees was to be submitted to the entire membership of the Association on October 18, 1950, for necessary approval. The liquidation of the assets of the Association having produced a fund of $19,628.87, under the plan proposed, the 73 members entitled to share in the distribution would receive amounts ranging from $60.80 to $323.

Appellants, members of the Association in good standing, filed a bill in equity on October 14, 1950,

praying (1) that the Association and its officers be enjoined from distributing the assets except in accordance with the Act of Assembly; (2) that the rights of the members, including appellants, be ascertained and that the assets of the Association be administered in accordance with those rights; and (3) that a receiver be appointed to conserve and administer those assets. The case was heard December 5, 1950, at which time the court, on stipulation of counsel, decreed a partial distribution in the sum of $60.80, the lowest amount proposed to be distributed, to each member in good standing. Prior to the determination of the equity suit, the Association filed a petition for dissolution with a prayer that a distribution based on the plan proposed by the trustees be approved. By stipulation, this petition was consolidated with the equity proceeding.

The chancellor held that the plan of distribution adopted at the meeting of March 7, 1946, approved without opposition at the subsequent meetings of June 8 and July 20, 1950, was within the corporate power, and being neither inequitable nor fraudulent was binding on all the members of the Association. The present appeal is from the decree of dissolution which ordered the distribution of the assets as set forth in the petition for dissolution and from the final decree which dismissed the bill in equity. Appellants contend that upon dissolution of a nonstock, nonprofit corporation the assets should be distributed equally among its members at the time of dissolution, irrespective of the length of time of membership.

Section 1001, article X of the Act of May 5, 1933, P. L. 289, as amended, 15 PS §2851-1001, which governs the voluntary dissolution of nonprofit corporations, is silent as to whether the assets of such corporations must be distributed equally among the members at the time of dissolution; it merely provides, inter alia: "Be-

fore entering the final decree of dissolution, the court shall cause the assets of the corporation to be marshaled and the property rights to be adjudicated, . . . In entering the final decree, the court shall order the distribution of the property and assets of the corporation among the members entitled thereto, . . ." In *Nokomis Tribe, etc., Dissolution Case,* 331 Pa. 53, 58, 200 A. 23, the Court said: "Section 304 provides for two kinds of nonprofit corporations: those organized upon a nonstock basis, and those upon a stock share basis. It is only in the case of the latter that, upon dissolution of the corporation, the shareholders are entitled to a pro rata distribution of the assets." The issue in the *Nokomis* case, differing from the issue in the case at bar, was whether on dissolution the assets of a local branch or "tribe" of the Improved Order of Red Men should be turned over to the Great Council of the State pursuant to the by-laws of the state organization, the constitution of the "tribe" and the general laws of the Order promulgated by the national organization by which the "tribe" was bound, or whether they should be divided among the members of the "tribe," a nonprofit corporation being dissolved.

The chancellor, while recognizing that the issues differed and that the statement quoted from the *Nokomis* case was dictum, nevertheless stated that it was not obiter but judicial dictum which, acccording to *Commonwealth ex rel. v. Paine,* 207 Pa. 45, 56 A. 317, was entitled to receive the respect due the opinion of the judge uttering it. He held that—inasmuch as the dictum in the *Nokomis* case was a declaration that "pro rata distribution," taken as meaning distribution on the basis of the number of shares held, was mandatory only when the nonprofit corporation being dissolved was formed on a stock share basis—where the corporation being dissolved was organized on a

nonstock basis, though the members might be regarded as holding one share each, a distribution of the assets might be predicated on a plan which did not produce literal equality, so long as it was neither inequitable nor fraudulent.

In our opinion the language of Mr. Justice STERN, even if given the binding force accorded it by the court below, is not decisive of the issue. Although we agree that there is nothing in the Act of 1933 to prohibit an unequal distribution of the assets of a nonstock, nonprofit corporation in a proper case, we cannot agree that the dictum in question may be interpreted as authorizing such a distribution. The *Nokomis* case held that the laws of the Order of Red Men governed the disposition of the assets of the "tribe" and that §1001 of the Act of 1933, "which applies to the voluntary dissolution of all nonprofit corporations," did not, as contended, mandatorily require the division of the assets among the members notwithstanding the laws of the Order. The Court pointed out certain language of §1001, which indicates that there is no absolute right in members to share in the assets of such corporations, and said (p. 58) that "the act provides for division of assets among the members of the corporation only if they are *entitled* under existing law." (Emphasis added.) Section 304, however, provides that "upon dissolution of any such corporation [organized on a stock share basis] the shareholders shall be *entitled to a pro rata distribution of the assets* thereof, . . . based upon their several holdings therein, as represented by the shares standing in the names of such shareholders at the time of dissolution . . ." (Emphasis added.) But it makes no like provision for the benefit of members of nonstock, nonprofit corporations. Bearing in mind that the dictum in the *Nokomis* case was apropos of the contention that an absolute right existed in the

members of the "tribe" under §1001 of the Act of 1933 entitling them to a division of the assets upon dissolution, and considering the fact that the language of the dictum is the language of §304, as well as the fact that there is no provision framed in the positive language of §304 relating to nonstock, nonprofit corporations, it is reasonable to view the dictum only as an intimation that the result might have been different if a stock share nonprofit corporation had been involved.

Section 601 of the Act, 15 PS §2851-601, not cited by counsel or the court below, provides in part: "Unless otherwise provided by the articles or by-laws, there shall be one class of members whose voting and other *rights and interests shall be equal. . . .*" (Emphasis added.) Since the phrase "rights and interests" no doubt includes the interest of members in the assets upon dissolution and the right to share therein, a distribution of assets made on an unequal basis must have support in the articles or the by-laws of the corporation being dissolved.

The Association does not point to any provision in the articles or in the by-laws, as such, to justify the distribution decreed. Instead, reliance is placed upon action taken at the various meetings, which, it is contended, culminated in a "rule or law" of the Association, "legally adopted by its members, whether it be called a by-law, rule or resolution, which fixes the rights of its members in the distribution of its assets upon dissolution." In support of its contention that the "rule or law of the corporation is controlling" it relies on *Flaherty v. Manufacturers' Club of Philadelphia,* 104 Pa. Superior Ct. 546, 159 A. 209. But that case was decided before the enactment of §601 of the Nonprofit Corporation Law. We repeat, the language of §601 is "Unless otherwise provided by the articles or by-laws."

The resolution to discontinue payment of death benefits and to substitute in lieu thereof a division of Association funds among the membership was read and adopted June 8, 1950, and July 20, 1950. No notice of the June 8 meeting was given, it being termed a regular meeting. But it could not have been a regular meeting since, at the meeting of March 7, 1946, it was decided to discontinue regular meetings and to meet annually in December. However, a written notice of the July 20 meeting was given which stated that final action would be taken on a change in the by-laws. The minutes of the meeting show that its purpose was to consider changes in the by-laws and that the only business transacted which could possibly relate thereto was the adoption of the resolution.

It is argued that, in view of the fact that appellants were present at both meetings and either voted for the resolution or did not vote at all, the vote on June 8 being unanimous and being 33-0 on July 20, "it would seem that plaintiffs should be estopped[1] from now raising any objection to the decreed distribution."

The resolution provided for a division of Association funds "in accordance with action taken March 7, 1946." The reference obviously was to the motion pertaining to the method of distribution; otherwise, the resolution has no significance. When the resolution is read with reference to the motion it provides for a division of assets "on a basis for each month a member has been a member" of the Association. However, the plan adopted by the trustees on October 3, 1950, was that distribution be made "on a basis of 95¢ per month

---

[1] "A . . . member of a corporation may waive his right to contest the validity of a by-law, or be estopped to set up its invalidity, by participation in its adoption, by holding it out as valid, or by otherwise recognizing or acquiescing in it . . .": 18 C. J. S., Corporations, §189 (f).

per member for the period during which a present member *has been continuously beneficial.*" (Emphasis added.) The basis of distribution adopted by the trustees was the basis upon which the distribution decreed was founded and the basis contended by appellee Association to have been established by a legally adopted "rule or law." That basis, however, is quite different from that contained in the resolution. Clearly, the theory behind the resolution was that distribution be made to each member in the same proportion as the dues he paid contributed to the accumulation of corporate assets. The trustees' plan, to the contrary, gave no consideration to the months a member belonged to the Association prior to the date of his last reinstatement to good standing, from which date the period during which he was continuously beneficial would be computed.

Appellants, therefore, cannot be estopped from objecting to the decreed distribution because of acquiescence in the adoption of a resolution which was not in fact the action of the Association upon which the decree was predicated. Moreover, reasoning along the same line, it avails the Association nothing to insist on the regularity of the adoption of the resolution as grounds for sustaining the decree.

The vital question is whether the plan proposed by the trustees, which as found by the chancellor "was subject to the approval of the entire membership of the defendant corporation," was submitted to the membership and duly approved so that it may be given the legal effect of a by-law. Before corporate action may be given the legal effect of a by-law it must substantially comply with the formal requirements of the charter and by-laws of the corporation or the pertinent statutory provisions. (18 C. J. S., Corporations, §§187, 188; see *Singer v. Brith Achim Beneficial Assn.,* 143 Pa. Superior Ct. 372, 18 A. 2d 131.) The charter makes

no reference to the enactment of by-laws. The by-laws of the Association are not printed in the record for review, since they were admitted only by reference thereto. But counsel for the Association admitted that the "Trustees had no power to finally make that distribution. That had to be approved by the entire membership." The trustees' plan was to be submitted to the "entire membership" at a special meeting October 18, 1950, but there is no finding that it was so submitted.

The statutory provision applicable is §401 of the Act, 15 PS §2851-401. It provides: "The members of a nonprofit corporation shall have the power to make, alter, amend, and repeal the by-laws of a nonprofit corporation, but the authority to make, alter, amend, and repeal such by-laws may be expressly vested by the articles or the by-laws in the board of directors, subject always to the power of the members to change such action. Unless the articles or by-laws otherwise provide, the powers hereby conferred shall be exercised by a majority vote of the members of the board of directors or of the members of the corporation who are present in person or by proxy and entitled to vote thereon, as the case may be, at any regular or special meeting duly convened after notice to the members or directors of that purpose."

Since it does not appear that the resolution approving the commencement of dissolution proceedings was "exercised by a majority vote . . . of the members of the corporation" favoring the proposal of the trustees at a "meeting duly convened after notice to the members . . . of that purpose," the statute was not complied with.

Decree of distribution reversed and it is ordered that a decree be entered in accordance with this opinion. Costs to be paid by the corporate appellee.