## Dissolution of Labor Lyceum

*Joseph Zaffiro* and *Raymond K. Hess*, for petitioner.

*Raymond C. Schlegel* and *George B. Balmer*, for respondents.

BERTOLET, J., February 5, 1965.—This is a proceeding for the dissolution of the captioned nonprofit corporation in which the dispute arises over the disposition of its considerable assets.

The subject corporation was organized in 1905 for the purpose, stated in its articles:

"For the purpose of encouraging and promoting the study of social, industrial and economic problems and a general literary improvement *among its members* by means of courses of instruction to be offered *to the members* by lectures and by the maintenance of a well equipped library". (Emphasis the present writer's.)

Subsequently, in 1930, it caused a subsidary, sub nomine Willow Glen Park Association, to be incorporated, its articles stating:

"The purposes of this corporation shall be the acquisition, holding and maintenance of a private park and all facilities for athletic sports".

The relationship was formally stated by a deed of trust executed by the officers of Willow Glen acknowledging that its assets were held for Labor Lyceum of Reading, Pa., present petitioner.

On June 23, 1963, the members of petitioner, by a vote of 15 to 7, authorized the liquidation of its assets. On September 10, 1963, the members resolved that said assets should be divided equally between all members, including the estates of two deceased members, in good standing on June 23, 1963, a total of 26 in all. On February 2, 1964, the instant dissolution proceeding requesting distribution as aforesaid was authorized by a vote of 17 to 5. On May 24, 1964, petitioner's mem-

bers directed that Willow Glen's now liquidated assets be transferred to Labor Lyceum, and this was done.

Four of the dissenting members of petitioner have objected to the distribution as proposed and contend that it should be made instead to a new corporation formed by them with one other on September 14, 1964, under the name of "Reading Labor Lyceum", having purposes similar to those of petitioner, but without limiting them to its members.

The objectors base their claim on that portion of section 1001 C of the Nonprofit Corporation Law of May 5, 1933, P. L. 289, which provides that in disposing of assets in a dissolution proceeding, "property devoted to . . . religious, literary, educational or charitable uses shall not be diverted from the objects for which it was donated, granted, bequeathed or devised".

It is noted that the last quoted provision is a re-enactment of prior existing law (Act of April 9, 1856, P. L. 293, 15 PS §501), and we understand that both of such provisions are merely statutory enactments of the common law doctrine of cy pres in respect of charitable trusts.

The first inquiry in the instant case, therefore, must be whether petitioner's assets were, in fact, donated for such literary and educational uses as are encompassed within the meaning of charitable trusts.

The Supreme Court early defined a charitable trust in the following language:

". . . If we were to attempt a definition which would embrace all gifts for charitable uses, we should adopt the language of the eminent patriarch of our profession, Mr. Binney, as expressed in his argument in Vidal et al. v. The City of Philadelphia: 'whatever is given for the love of God, or for the love of your neighbour, in the catholic and universal sense—given from these motives and to these ends—free from the stain or taint of every consideration that is personal, private,

or selfish,' is a gift for charitable uses. . . .": Price v. Maxwell, 28 Pa. 23 (1857) at 35.

And although Mr. Scott, in his monumental work, takes a poor view of Mr. Binney's definition from the subjective viewpoint, we believe he would not disapprove of it if taken objectively: 4 Scott, Trusts (2d ed. 1956), §348.

It appears that petitioner's assets were obtained by the dues and labors of its members, the participants in Willow Glen all being members of petitioner.

Examination of petitioner's purpose clause quoted above shows that its stated activities were to be limited "among the members" and "to the members". Nothing is to be done for the benefit of anyone outside its membership. No one not a member would have the right to demand to be benefited by the assets.

Holding up the stated purpose of petitioner against the definition of a gift for charitable uses, we find that petitioner's assets, donated by its members, were not given for the love of their neighbors, free from every consideration that was personal, private or selfish, but, on the contrary, were given by the members for their own benefit and improvement.

We also deem the following proposition stated in Restatement, Trusts 2d 8370, comment k (1959), as sustained by the facts in this case, viz.:

"A trust for the promotion of education is not charitable if the beneficiaries are limited to the members of a class so small that the relief of the class is not of benefit to the community". See also §375, comment a.

We are, therefore, of the opinion that the doctrine of cy pres, whether under the common law or the Nonprofit Corporation Law, is not applicable here.

Further, even if the above quoted portion of the Nonprofit Corporation Law be deemed applicable to a private use or trust, as well as to a charitable trust, and the instant case be deemed a private use, we are of

the opinion that the limitation for the benefit of members contained in the petitioner's articles of incorporation are a complete answer to the objectors' claim to have the assets awarded to their newly formed organization.

We have examined all of the decisions cited by the objectors and note that in none of them were the assets in dispute contributed by the members of the organization for their own benefit, as is the fact in the instant case. We consider this a logical and substantial distinction.

The claim of the objectors for distribution of petitioner's assets to their newly formed corporation is, accordingly, refused.

We are satisfied that the prayer of the present petition may be granted without prejudice to the public welfare or the interests of the members of petitioner corporation.

Accordingly, dissolution of petitioner Labor Lyceum of Reading, Pa., is hereby approved, and it is ordered that its net assets be distributed pro rata to the 26 members in good standing on June 23, 1963. See section 601 of the Nonprofit Corporation Law and DeChamplain v. P. & R. Home Association, 171 Pa. Superior Ct. 420 (1952) at 427.

Counsel for petitioner shall prepare an order of distribution consistent with this opinion.

And now, February 5, 1965, the prothonotary is directed to give notice of this opinion to the parties or their counsel of record, and unless exceptions are filed thereto within 15 days, a final decree will be entered.

OPINION SUR EXCEPTIONS

BERTOLET, J., October 8, 1965.—This matter arises on exceptions to the opinion of the present writer directing distribution of the assets of Labor Lyceum of Reading, Pa., pro rata among its members and denying the claim of the objectors for distribution to their

newly formed corporation. The facts of the case are summarized in that opinion, handed down February 5, 1965.

Exceptants first contend that section 1001 C of the Nonprofit Corporation Law of May 5, 1933, P. L. 289, as amended, 15 PS §2851-1001 C, ". . . provided that property devoted to community industrial development, religious, literary, education or charitable uses shall not be diverted from the objects for which it was donated, granted, bequeathed or devised", is not limited to being a statutory enactment of the common law doctrine of cy pres (which was applicable only to charitable trusts), otherwise, there was no need to name several specific uses if merely "charitable" would do. However, all of the named uses are charitable: Restatement, Trusts 2d §368 (1959); Estates Act of April 24, 1947, P. L. 100, 20 PS §301.1, and we regard the naming of specific types as merely another example of tautology in an abundance of caution, a thing not unknown in legal draftsmanship. If the legislature had intended to go beyond the common law cy pres doctrine, it could easily have said so.

Nor do we believe that Grand Lodge Independent Order of Odd Fellows of Pennsylvania v. Baker, 192 Pa. Superior Ct. 14 (1960), rules the instant case. There the court found at page 21 that ". . . It was incorporated for benevolence and charity. . . ." We cannot say that here.

Exceptants next contend that the assets in suit were, in fact, devoted to charitable uses from which they cannot be diverted. The court, in Lawson's Estate, 264 Pa. 77 (1919), restated an old principle when it said at page 83, "When the bequest is to an association whose benevolence is restricted to its members only, it is not a public charity . . .". We think the instant case by its own purpose clause falls into the same category.

If, however, we should be in error, it should be noted

that it is our opinion that the cy pres principle would only be applicable to that portion of the fund that was always the property of Labor Lyceum of Reading, Pa., and not to those moneys that were just recently transferred to it by its subsidiary Willow Glen Park Association, inasmuch as these latter were never devoted to educational purposes (see Willow Glen's purpose clause).

While exceptants' last point, viz., that the assets in suit should be awarded to the new corporation recently formed by them, need not be considered in view of the foregoing opinion, we nevertheless believe it proper to say that if an appellate court should hold the cy pres principle to be applicable, then, in the light of the present record, we would be inclined to say that the relevant funds should be awarded to Albright College, which was chosen by petitioner before the present dispute and schism arose, as the proper recipient of the great bulk of its library, rather than to any small splinter group. Of course, additional testimony might change this thought.

Although exceptants' counsel have submitted a masterly 27 page brief, we are not persuaded by it.

And now, October 8, 1965, the exceptions are dismissed.

### DISSENTING OPINION

HESS, P.J., October 8, 1965.—I respectfully dissent from the opinion of the majority of this court which orders distribution of the assets of Labor Lyceum of Reading, Pa., to the surviving members. The 26 members will share equally in cash assets of $77,489.35—assets which were acquired by the corporation during the 60 years of its history. During its span of life, the corporation numbered among its members thousands of Berks Countians, including many who played prominent parts in the economic and political history of Reading and Berks County. At the high point of its

activity, it included 2,500 members. Among the deceased members were J. Henry Stump, honored on three occasions by being elected Mayor of the City of Reading; Andrew P. Bower, an outstanding labor leader; James H. Maurer, prominent in State and city government and candidate for Vice President of the United States. The present distinguished congressman from Berks County was formerly a member. Among the surviving members are two of the leading members of the Berks County bar. These individuals, along with thousands of others, labored to fulfill the corporate purpose of the organization: ". . . encouraging and promoting the study of social, industrial and economical problems and a general literary improvement among its members by means of courses of instructions to be offered to the members by lectures and by the maintenance of a well-equipped library". At one time, the library included approximately 2,000 volumes.

The majority opinion relies on the pronouncement of Lawson's Estate, 264 Pa. 77, 83: "When the bequest is to an association whose benevolence is restricted to its members only, it is not a public charity . . .". I have read numerous cases that discuss a so-called "purely public charity" and find that, for the most part, they relate to the validity of bequests by will and real estate tax exemptions. I do not consider them applicable to the question of distribution of the assets of a corporation. Furthermore, as I study the record, I would find it difficult to conclude that the literary and educational purposes of the corporation were restricted to the members. At one time, the corporation offered benefits in the field of education to as many as 125,000 people.

In my opinion, this case is ruled by Bethlehem Borough v. Perseverance Fire Co., 81 Pa. 445. In that case, the Supreme Court held that the corporation held title to property ". . . in trust for the uses and purposes of its creation, that was for the protection of the property

of their fellow-citizens from fire. It had no right to divest the property of that general trust nor to divert it from that general purpose. The corporation may in good faith dispose of any specific article, using the proceeds thereof in the acquisition of new or improved apparatus, to be used for the purpose mentioned in its charter. In whatever form the company changes the property, the trust still inheres. *It cannot sell it and divide the proceeds among its members*": page 458. (Italics supplied.) The pronouncement of the Bethlehem case accords with the present law relating to disposition of assets of a corporation on dissolution: Act of May 5, 1933, P. L. 289, sec. 1001, as amended. In my opinion, the remaining assets of this corporation may not be divided among the members, but must be devoted to continuing and furthering the purposes which were advanced by the corporation throughout its long history.

The writer of this opinion has serious doubt that members of a nonprofit corporation may share in the assets of such corporation upon dissolution unless their rights are set forth in the articles of incorporation or the organization is established on a stockholding basis. ". . . It is only in the case of the latter [stock] that, upon dissolution of the corporation, the shareholders are entitled to a pro rata distribution of the assets": Nokomis Tribe No. 307, Improved Order of Red Men of Pennsylvania Dissolution Case, 331 Pa. 53, 58. See also Grand Lodge Independent Order of Odd Fellows of Pennsylvania v. Baker, 192 Pa. Superior Ct. 14.

I also dissent from the pronouncement of the majority opinion which indicates what portion of the assets should be distributed by cy pres in the event that an appellate court should reverse the opinion of this court. I respectfully dissent from the tentative award to Albright College—not because I quarrel with the college as being a worthy and proper recipient. My disagree-

ment with the majority on this point is predicated upon the fact that no tentative distribution by cy pres is in order when the majority has found that the principle is not here applicable. In the event of a reversal, all claimants who can qualify should have a right to have their claims considered by the court before an award is made.