Baldwin et al., Appellants, *v.* Rose Tree Fox Hunting Club.

Argued January 16, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused May 31, 1973.

*Robert B. Ely, III,* for appellants.

*Patrick T. Ryan,* with him *Stewart Dalzell,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, May 4, 1973:

This is an appeal from an order of the Common Pleas Court of Delaware County sustaining appellees' preliminary objections and dismissing appellants' complaint in equity. Appellants are active members of the Rose Tree Fox Hunting Club as of December 16, 1963, who have continued their membership in good standing, plus the heirs of those members who have died since December 16, 1963. Appellees are Rose Tree Fox Hunting Club and its present officers.

In 1963 appellants, then the only members of Rose Tree, were faced with the prospect of losing their club's land in Delaware County through condemnation because of increasing urbanization in that County and the need for additional public recreation facilities. At a special meeting on December 16, 1963, called to discuss the future of the club, the membership passed several

Resolutions three of which are relevant to this litigation.[1] Those Resolutions were:

"3. RESOLVED THAT the net proceeds of the sale [of the club's land, etc., in Delaware County] be placed in escrow with a corporate fiduciary and invested for a period of three years in trust for the active members and their heirs as set forth in paragraph #4. During these three years the income from these investments be used by the Club to promote present Club activities within our territories assigned by the Masters of Fox Hounds Association of America, which includes York County where Rose Tree has carried on fox hunting on a profitable basis for the past five years.

"4. RESOLVED THAT at the conclusion of this three-year period, Active Members in good standing as of December 16, 1963, and who continue to maintain their membership in good standing, shall have the option of withdrawing their pro rata equity of the net proceeds of the sale of the land and improvements. At the conclusion of this three-year period, the heirs of a deceased Active Member as of December 16, 1963, shall receive the late member's pro rata equity, less obligations to the Club, including dues to the end of the three-year period.

"7. RESOLVED THAT future members joining the Club after December 16, 1963 shall not have any vested interest in the land and improvements, or the proceeds therefrom, presently owned by the Rose Tree Fox Hunting Club." At this meeting 35 of the club's total membership of 48 members were present. Resolutions 4 and 7 were passed unanimously, while Resolution 3 was passed by a vote of 21-9.

In 1966, in accordance with Resolution 3, the club's land in Delaware County was sold and the proceeds of

---

[1] For a more detailed discussion of the facts and events leading to this litigation see *Borden v. Baldwin*, 444 Pa. 577, 281 A. 2d 892 (1971).

the sale were deposited in an escrow account entitled "Rose Tree Fox Hunting Club—Old Members' Equity." By August 23, 1969, when the three-year trust provision of Resolution 3 had expired, the club had moved to York County, and the majority of Rose Tree's membership was composed of "new" York County members. Sometime after August 23, 1969, the new officers of the club withdrew the balance of the "Old Members' Equity" account and invested it in certain U. S. Treasury Bills. Appellants subsequently made numerous oral and written requests pursuant to the above Resolutions to have their pro rata shares of the proceeds from the sale of the Delaware County property distributed to them. All requests were refused by the new officers of the corporation.

Appellants' initial attempt to resolve this dispute through legal action resulted in dismissal of their petition pursuant to appellees' preliminary objections. This Court affirmed that decision in *Borden v. Baldwin*, 444 Pa. 577, 281 A. 2d 892 (1971).

Thereafter appellants instituted the present complaint in equity seeking a declaratory judgment directing:

"(1) that those resolutions [passed on December 16, 1963] placed upon the then officers and their successors [including the Defendants] the duty to manage the affairs of the Defendant Rose Tree so as to effect the By-Laws established by those Resolutions, through corporate reorganization (as by merger into a newly formed or a separate existing corporation) to permit continuance and expansion of the experimental activities authorized for a three-year period, and through voluntary dissolution to permit distribution to those desiring it at the end of that period;

"(2) that the individual Defendants file with the Court a petition for voluntary dissolution in accordance with the Non-Profit Corporation Law, together

with a full accounting for the proceeds in dispute, as well as a plan of liquidation providing for the foregoing reorganization and payment of their pro rata shares of the proceeds in dispute, including interest thereon or income therefrom, to Plaintiffs desiring the same;

"(3) that the Defendants, and any successors in office of the individual Defendants, be restrained preliminarily until hearing may be held, and permanently thereafter from intermingling those proceeds with other funds, making withdrawals therefrom or otherwise dealing with the same, except to receive, retain and invest income therefrom, or upon further order of the Court."

Appellees, again, interposed preliminary objections seeking to dismiss appellants' complaint for the following reasons: (1) res judictata; (2) lack of a justiciable controversy; (3) an adequate remedy at law; and (4) a demurrer that the complaint fails to state a cause of action because, (a) no by-laws were created giving appellants any rights they claim; (b) no intent to dissolve the corporation can be inferred from the minutes of the meeting of December 16, 1963; and (c) appellants are estopped from asserting any vested interest in the property of the Club.

Based solely on points (a) and (b) of appellees' demurrer the court sustained the preliminary objections and dismissed the complaint, whereupon appellants filed this appeal. Appellants argue here that, contrary to the court's decision below, the Resolutions were validly enacted giving them the rights they claim, and that the officers of the corporation are bound to carry out the clear directives of those Resolutions. We agree with appellants and accordingly reverse and remand.

The first issue to be resolved is whether the Resolutions of December 16, 1963, were enacted consistent with the corporation's by-laws and the Nonprofit Corporation Law. Act of May 5, 1933, P. L. 289, art. I,

§§1 et seq., 15 P.S. §§7001 et seq. The chancellor ruled that the Resolutions were not validly enacted because of noncompliance with the notice provision of the corporate by-laws.[2] The chancellor noted that rather than stating specifically what was to be discussed at the special meeting, as required in the by-laws, the notice only indicated that the purpose of the meeting was "to discuss and take necessary action regarding the future of the" Club.

However, even assuming, arguendo, that notice was insufficient, the notice provision in the by-laws was waived by attendance at the special meeting. "Attendance of a person either in person or by proxy, if the by-laws permit voting by proxy, at any meeting shall constitute a waiver of notice of such meeting, except where a person attends a meeting for the express purpose of objecting to the transaction of any business because the meeting was not lawfully called or convened." Act of May 5, 1933, P. L. 289, art. I, §10, as amended, 15 P.S. §7010. Here, 35 of a total membership of 48 persons attended the meeting. This was sufficient to constitute a quorum for the proper conduct of the business of the corporation. No objection was interposed by any other members.

The chancellor also held that Resolution 3 creating the three-year trust fund for the old members was invalid because it was approved by only 21 of the 35 members present—two less than the necessary two-thirds majority. He concluded that there was not a validly adopted resolution indicating an intent to dissolve the corporation.

---

[2] Article XXXI of Rose Tree's by-laws provides: "All By-Laws for the government of the Club or amendments thereto may be made by a two-thirds vote of the members present at any special or regular meeting, provided that ten days written notice of the proposed By-Laws or amendments be mailed to each member."

However, as appellants correctly point out, the chancellor applied the right criterion (the two-third majority vote) to the wrong Resolution. Resolution 3 dealt with the creation of the trust, which is no longer relevant.[3] Resolutions 4 and 7 gave appellants the option to withdraw their pro rata equity and excluded later members from having any vested interest in those proceeds. It was Resolutions 4 and 7 that expressed the membership's intent to dissolve the corporation. Both of those Resolutions were passed unanimously—clearly sufficient to meet the two-thirds majority requirement. Therefore these Resolutions, giving appellants the option to withdraw their funds, were validly enacted.[4]

The next issue is whether there was, in fact, an intent to dissolve the corporation expressed in the Resolutions of December 16, 1963. Appellees argue that on its face Resolution 3 expresses no desire on behalf of the corporation to dissolve itself. Again, however, appel-

---

[3] Even if Resolution 3 was invalid because not approved by the necessary two-thirds majority of those present, nevertheless the corporation, by its actions has in fact acquiesced in that Resolution. The club did sell the land in Delaware County, and did place the funds in a separate trust account for the old members. Thus whether Resolution 3 was validly enacted is irrelevant at this stage of the proceedings when the purpose of that Resolution has already been accomplished.

[4] Appellees also argue that appellants (the old members) cannot be entitled to greater proprietary rights in the corporation than appellees (the new members) because section 601 of the Nonprofit Corporation Law prohibits nonprofit corporations from creating unequal classes of membership. Section 601 provides in part: *"Unless otherwise provided by the articles or by-laws,* there shall be one class of members whose voting and other rights and interests shall be equal."* Act of May 5, 1933, P. L. 289, art. VI, §601, 15 P.S. §7601 (emphasis added).

However, the obvious result of Resolutions 4 and 7, validly enacted, was to create just such unequal classes as are clearly permitted by section 601, supra.

lees have directed their attack toward the wrong Resolution. Resolution 4 clearly expressed the corporate decision to give appellants (old members) their pro rata equity distribution at any time after the expiration of the three-year trust period. Under the statute (Act of May 5, 1933, P. L. 289, art. X, §1001, as amended, 15 P.S. §8001) the only method of accomplishing this pro rata distribution to the old members is dissolution of the corporation. While the drafters of the Resolution may not have been aware of the precise statutory prerequisites to such distribution, the intention to effect a distribution is nonetheless clearly evident. The undeniable implication of Resolution 4 is that the officers of the corporation should take all necessary steps to fulfill the mandate of that Resolution. This necessarily means that the officers must take the required steps to dissolve the corporation.[5]

Appellants now have commenced the appropriate action—indeed virtually the only course of action available to them—by seeking a judicial decree declaring the duty of the corporate officers to adhere to the mandates of these properly adopted Resolutions.

---

[5] This action is in accord with this Court's prior decision in *Baldwin*, supra at 584, 281 A. 2d at 896, where we indicated that appellants must comply with the "careful framework . . . for the voluntary dissolution of such organizations. . . ." provided in the statute, before they are entitled to any distribution.

The chancellor also refused to view Resolution 4 as expressing an intent to dissolve the corporation because of his interpretation in *DeChamplain v. P. & R. Home Ass'n*, 171 Pa. Superior Ct. 420, 90 A. 2d 603 (1952), which he read to mean that by-law amendments cannot be found by implication. However, the principal basis for rejecting the by-law amendments in *DeChamplain* was that the by-law there did not "substantially comply with the formal requirements of the charter and by-laws of the corporation or the pertinent statutory provisions." Id. at 429, 90 A. 2d at 607. Here, as noted above, Resolutions 4 and 7 *did comply* with those formal requirements.

Finally appellees contend that appellants are barred by the doctrine of res judicata from now pursuing this claim.[6] Appellees rely, mistakenly, on *Borden v. Baldwin,* supra and argue that this Court's decision in 1971 that no distribution may occur absent dissolution proceedings is a bar to this litigation. We find this argument both fallacious and without merit.

In *Baldwin,* supra at 583, 281 A. 2d at 895, this Court said "[t]he corporation code will not suffer even a partial distribution of funds absent formal dissolution proceedings." See Act of May 5, 1933, P. L. 289, art. III, §304, as amended, 15 P.S. §7304. However, we most definitely did not bar appellants from subsequently attempting to institute those statutorily required dissolution proceedings. This is precisely what appellants have attempted to do in this action, and we see no impediment to their right to proceed.

Decree reversed and remanded for proceedings consistent with this opinion. Each party to pay own costs.

---

[6] We will not discuss any of appellees' other preliminary objections because they are without merit.